535 A.2d 1145

Galen H. WOLGEMUTH, Administrator of the Estate of Gail
M. Wolgemuth, Appellant,

and

Todd W. Hummel, Appellee,

v.

HARLEYSVILLE MUTUAL INSURANCE CO. and Ross J.
Spera and Quentin Riding Club, Erie Insurance Exchange,
Ohio Casualty Insurance Co. and Aetna Life & Casualty
Company, Appellees.

Superior Court of Pennsylvania.

Argued June 8, 1987.

Filed Jan. 11, 1988.

52

Kenneth C. Sandoe, Myerstown, for appellant.

Alexander Kerr, Philadelphia, for Harleysville, appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA and JOHNSON, JJ.

McEWEN, Judge:

We here provide en banc review of whether a guest passenger, who is a covered person under the terms of a policy of motor vehicle insurance applicable to the host vehicle, and who is injured in a single vehicle accident, may recover underinsurance benefits under the policy of insurance applicable to the host vehicle, when that passenger has already received the limits of the liability coverage under that same policy.

This declaratory judgment action was commenced by appellant, Galen H. Wolgemuth, as administrator of the estate of Gail M. Wolgemuth, to determine whether Harleysville Mutual Insurance Company had properly denied appellant's claim for underinsurance benefits on the grounds that the policy issued by appellee Harleysville precluded such a claim on the behalf of the estate of Gail M. Wolgemuth. The trial court determined that the policy did preclude such a claim and that the terms of the policy did not violate either the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1701 *et seq.*, or public policy. Appellant has taken this appeal from the entry of summary judgment in favor of appellee Harleysville. We affirm.

Gail M. Wolgemuth and Todd W. Hummel were passengers in a vehicle owned and operated by Ross J. Spera when the automobile was involved in a single vehicle accident,

resulting in the death of Gail M. Wolgemuth.[1] Appellee Harleysville had issued a policy of automobile insurance to Ross J. Spera which provided liability coverage in the amount of $100,000.00 as well as uninsured/underinsured motorist coverages each in the amount of $100,000.00. Harleysville paid the full amount of the liability coverage to appellant, but denied the claim for underinsurance benefits on the ground that the claim was precluded by the terms of the policy which provided that the insured vehicle could not be an "underinsured motor vehicle" for purposes of determining entitlement to underinsured motorist benefits.

Appellant concedes that the express terms of the policy itself preclude recovery of underinsured benefits by the estate of Gail M. Wolgemuth, but argues that the policy definition of "underinsured motor vehicle" is void as violative of public policy, and is, as well, contrary to the express provisions as well as the intent of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1701 *et seq.*

As a result of the enactment of the Pennsylvania Motor Vehicle Financial Responsibility Law, every motor vehicle liability insurance policy issued in the Commonwealth of Pennsylvania must provide underinsured motorist coverage. Section 1731 of the Act provides, *inter alia:*

§ 1731. **Scope and amount of coverage**

(a) **General rule.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage).

\* \* \* \* \* \*

1. Todd W. Hummel survived but sustained serious personal injuries as a result of the accident. Todd W. Hummel did not file a notice of appeal although the two actions were consolidated in the court of common pleas.

**(c) Underinsured motorist coverage.**—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles.

75 Pa.C.S. § 1731(a), (c).

The act defines the term "underinsured motor vehicle" as a "motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S. § 1702.

The act, as well, requires that all policies of motor vehicle insurance issued in the Commonwealth provide for liability coverage in no less than "the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident...." 75 Pa.C.S. § 1702.[2] Where an insured obtains liability coverage in the minimum amount permitted under the statute, the policy must provide uninsured and underinsured motorist coverages in amounts equal to the liability coverage. 75 Pa.C.S. §§ 1731(a), 1734. An insured who purchases liability coverage in an amount greater than the minimum amount required by the Motor Vehicle Financial Responsibility Law may obtain uninsured and underinsured coverages in amounts equal to, *but not greater than,* the amount of his liability coverage. *See:* 75 Pa.C.S. §§ 1731(a), 1736.[3]

The instant policy of insurance issued by Harleysville provided, with respect to the underinsured motorist coverage:

**2.** These amounts are, of course, merely the minimum amounts required by law. An insured wishing to purchase liability coverage in an amount greater than the minimum coverage may do so. See: 75 Pa.C.S. § 1791.

**3.** The legislature has thus prevented an insured from providing greater coverage, via uninsured/underinsured coverages, for himself and his additional insureds than the amount of coverage he provides for others injured through his negligence.

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or *underinsured motor vehicle* because of bodily injury:

 1. Sustained by a covered person; and

 2. Caused by an accident.

* * * * * *

*"Covered person"* as used in this endorsement means:

 1. You and any family member.

 2. Any other person *occupying your covered auto.*

 3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

*"Underinsured motor vehicle"* means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is not enough to pay the full amount the *covered person* is legally entitled to recover as damages.

* * * * * *

In addition, neither "uninsured motor vehicle" nor *"underinsured motor vehicle"* includes any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any family member. (emphasis supplied).

Appellant argues that because the legislature has made underinsured motorist coverage mandatory, any policy provision such as the provision set forth in appellees policy, which operates to deny a claimant underinsured motorist benefits violates the public policy of this Commonwealth. This argument reflects a misapprehension of the nature of underinsured motorist coverage.

Prior to the passage of the Motor Vehicle Financial Responsibility Law, underinsured motorist coverage, unlike uninsured motorist coverage, was not required in Pennsylvania or regulated by statute. *See: Votedian v. General*

*Accident Fire and Life Assurance Corp.*, 330 Pa.Super. 13, 18, 478 A.2d 1324, 1327 (1984). Our Supreme Court in *Davis v. Government Employees Insurance Co.*, 500 Pa. 84, 454 A.2d 973 (1982), recognized the often inequitable results occasioned by the failure to require mandatory underinsured motorist coverage and noted the:

> "oft cited anomaly that those in the position of [claimants who had purchased uninsured motorist coverage and who were injured by a minimally insured driver] would find themselves in a better position were the tortfeasor's vehicle totally uninsured rather than underinsured." *Gorton v. Reliance Insurance Co.*, 77 N.J. 563, 570, 391 A.2d 1219, 1223 (1978). This anomaly, however, stems from the fact that the legislature has chosen not to require insurance coverage for those instances in which a tortfeasor's insurance is insufficient to satisfy the injured party's claim.

*Davis v. Government Employees Insurance Co., supra*, 500 Pa. at 91, 454 A.2d at 976 (footnote omitted). Our legislature responded to and resolved this anomaly with the passage of the Motor Vehicle Financial Responsibility Law.

The legislature, in establishing $15,000/$30,000 as the minimum permissible liability coverage, unquestionably realized that in many instances an accident victim would be insufficiently compensated by the tortfeasor even though the tortfeasor was insured. But the legislature, with the passage of the Motor Vehicle Financial Responsibility Law, did ensure that every insured individual who is injured by a negligent, underinsured motorist, will have recourse to at least $15,000 of underinsured motorist benefits either (1) pursuant to the policy of insurance applicable to the vehicle in which the individual was a passenger (if the vehicle was not at fault), or (2) pursuant to a policy of insurance under which the injured claimant is an insured [4] person.

**4.** The Motor Vehicle Financial Responsibility Law defines "insured" as "[a]ny of the following:
 (1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.
 (2) If residing in the household of the named insured:

■ The purpose of underinsured motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage to compensate for the injuries caused by his negligence. Thus, an insured who purchases $100,000.00 of liability coverage to protect others from *his* negligence, must, by law, be offered the option of purchasing up to $100,000.00 of underinsured motorist coverage to protect himself and his additional insureds from the risk that they will be severely injured by a negligent driver who has liability coverage in an amount insufficient to fully compensate them for their injuries.

■ The language of the statute itself suggests that underinsurance motorist coverage requires the existence of at least *two* applicable policies of motor vehicle insurance. *See* 75 Pa.C.S. § 1731(c). An underinsured motor vehicle, must, by definition, be an insured vehicle. Thus, the statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a *second* policy, under which the injured claimant is either an insured or a covered person. It is the *second* policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

Thus, had Gail M. Wolgemuth been injured in an accident caused by a second vehicle while she was a passenger in the vehicle insured by appellee, appellant would have been entitled to recover the available limit of liability coverage applicable to the vehicle which caused the accident, and, if

(i) a spouse or other relative of the named insured; or
(ii) a minor in the custody of the named insured or relative of the named insured."
75 Pa.C.S. § 1702

not fully compensated, to recover underinsured motorist benefits under the policy issued by appellee to Ross J. Spera, and, if still not fully compensated, to recover underinsured motorist benefits pursuant to any policy of motor vehicle insurance under which she was an insured. *See:* 75 Pa.C.S. § 1733.

However, under the facts of the instant case, the statutory scheme contemplates recovery by appellant of the available limits of liability applicable to the negligent vehicle, i.e., the vehicle insured by appellee, Harleysville, with recourse to underinsurance benefits pursuant to any policy under which Gail Wolgemuth was an insured.

Thus, contrary to the assertion of appellant, the exclusion at issue does not *deny* underinsured motorist coverage to appellant, but rather requires that such benefits be obtained, under the circumstances of this case, pursuant to a policy of insurance under which Gail M. Wolgemuth was an insured.[5]

We are not here asked to determine, and express no opinion upon, whether an insured, as that term is defined by the Motor Vehicle Financial Responsibility Law, could, under certain circumstances, recover under both the liability and underinsured motorist provisions of a single policy. Appellant's decedent was a class two beneficiary [6] of the policy issued by appellee Harleysville. As a class two beneficiary, Gail M. Wolgemuth had no recognizable contractual relationship with the insurer of the vehicle, had paid no premiums for such coverage, and had no reasonable

---

**5.** While certainly not determinative of the issue, we note that the form of the policy issued by appellee Harleysville was submitted to and approved by the Insurance Commissioner pursuant to the Act of May 17, 1921, P.L. 682, art. III, *as amended,* 40 P.S. § 477.

**6.** Our Supreme Court, in *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984), described and applied the three level beneficiary classification contained in most policies of insurance as well as in the policy issued by appellee. Under this classification system, appellant's decedent was a "class two" insured, as her entitlement to coverage was based solely upon her occupancy of the vehicle at the time of the accident.

expectations as to coverage under the policy issued by appellee. To permit appellant to recover underinsured motorist benefits from appellee Harleysville under the circumstances of this case would be to convert the essentially first party underinsured motorist coverage into third party liability coverage. As the Supreme Court of Minnesota stated in rejecting an identical argument:

> Underinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person not the vehicle. Here, however, the decedent passenger's heirs have already collected under the liability coverage of the insurer of the Stein car. To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage. The policy definition defining an "underinsured motor vehicle" to exclude a vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage.

> The purpose of underinsured coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile. Ordinarily, a passenger injured in a one-car accident involving someone else's car, such as here, would be able to recover underinsured motorist benefits under his or her own underinsured motorist coverage. Decedent Myers, however, did not own a car and consequently had no such coverage. But Stein's insurance policy is not designed to compensate Stein or his additional insureds from Stein's failure to purchase sufficient liability insurance. Thus, we conclude that the definition of uninsured motor vehicle, which expressly excludes the insured vehicle, is not void as violative of public policy.

*Myers v. State Farm Mutual Automobile Insurance Co.,* 336 N.W.2d 288, 291 (Minn.1983). Accord: *Preferred Risk*

*Mutual Insurance Co. v. Tank,* 146 Ariz. 33, 35–36, 703 P.2d 580, 582–583 (1985); *Millers Casualty Insurance Company of Texas v. Briggs,* 100 Wash.2d 1, 6–8, 665 P.2d 891, 894–895 (1983); *Breaux v. Government Employees Insurance Company,* 369 So.2d 1335, 1338 (La.1979).[7]

■ We conclude, therefore, that the definition of underinsured motor vehicle, contained in the policy issued by appellee Harleysville, does not violate the public policy of this Commonwealth since the Motor Vehicle Financial Responsibility Law "contains no indication of policy clear enough to void a plain, unambiguous provision in an insurance contract...." *Antanovich v. Allstate Insurance Co.,* 507 Pa. 68, 76, 488 A.2d 571, 575 (1985).

■ Appellant also argues that a policy provision which prevents an occupant of an insured vehicle from collecting underinsured motorist benefits from the insurer of the host vehicle violates the express provisions of Section 1733 of the Motor Vehicle Financial Responsibility Law. We disagree. Section 1733, which sets forth the priority of recovery of underinsured and uninsured motorist benefits, provides as follows:

*Where multiple policies apply,* payment [of underinsurance/uninsured benefits] shall be made in the following order of priority:

(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

7. Our research has disclosed only one court which has held a provision of a policy of insurance excluding the insured vehicle from the definition of "underinsured motor vehicle" invalid. The Court of Appeals of South Carolina, in *Bratcher v. National Grange Mutual Insurance Company,* 292 S.C. 330, 356 S.E.2d 151 (Ct.App.1987) (petition for writ of certiorari pending), held that the son of the named insured, injured while a passenger in the insured vehicle, was entitled to underinsurance motorist benefits on the basis of state cases holding that "'[w]here an insurance policy is issued pursuant to a statute which authorizes an exception to the coverage, all other exceptions are excluded.'" *Id.* at 332, 356 S.E.2d at 152, quoting *McDonald v. State Farm Mutual Automobile Insurance Company,* 287 S.C. 40, 44, 336 S.E.2d 492, 494 (Ct.App.1985).

(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

75 Pa.C.S. § 1733 (emphasis supplied).

By its very terms Section 1733 is applicable only where *multiple policies* providing uninsured/underinsured motorist coverages for the injured claimant are applicable and merely regulates the priority of recovery. It does not establish or purport to determine entitlement to such benefits. *See and compare: Gentile v. West American Insurance Exchange*, 367 Pa.Super. 99, 532 A.2d 472 (1987).

Appellant also argues that, due to the remedial nature of the Motor Vehicle Financial Responsibility Law, its provisions must be construed liberally to afford the greatest possible coverage to injured claimants. It is undoubtedly correct that the Motor Vehicle Financial Responsibility Law is to be liberally construed. *See:* 1 Pa.C.S. § 1928(c). We may not, however, rewrite the Motor Vehicle Financial Responsibility Law "under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Rather, we must be guided in our interpretation of the Motor Vehicle Financial Responsibility Law by the Statutory Construction Act, 1 Pa.C.S. §§ 1501 *et seq.* Our object in interpreting this or any legislation is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). In those instances where:

the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

The Motor Vehicle Financial Responsibility Law, unlike the now repealed No-fault Motor Vehicle Insurance Act,[8] does not contain a statement of findings and purpose. However, the legislative history of the Motor Vehicle Financial Responsibility Law suggests that the major considerations prompting the repeal of the No-fault Act and the passage of the Motor Vehicle Financial Responsibility Law were the rapidly escalating cost of coverage under the No-fault Act and the increasingly high numbers of uninsured motorists.[9] The rationale for the inclusion of mandatory underinsured motorist coverage in the Motor Vehicle Financial Responsibility Law was not the subject of debate or specific discussion by the members of either the House or the Senate. Our reading of the uninsured/underinsured provisions of the Motor Vehicle Financial Responsibility Act, however, compels the conclusion that recovery by appellant of underinsured motorist benefits, under the circumstances attendant this case, was not intended or anticipated by the legislature.

Section 1921 of the Statutory Construction Act also requires that we consider the "consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(6). Were we to declare the exclusion at issue void and permit appellant to convert the underinsured motorist coverage into third party liability coverage, our decision would necessarily effect an increase in the cost of the mandatory underinsured motorist coverage. As heretofore observed, one purpose of the legislature in enacting the Motor Vehicle Financial Responsibility Law was to reduce the cost of purchasing motor vehicle insurance, an objective we would neglect were we to accept the invitation of appellant to rewrite the Motor Vehicle

8. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.*, repealed by the Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

9. See: Senate Journal, October 4, 1983, and January 25, 1984; House Journal, December 13, 1983, and December 14, 1983.

Financial Responsibility Law under the guise of liberal interpretation.[10]

Having concluded that the policy definition of underinsured vehicle, which excluded the insured vehicle does not violate either the express provisions or the purpose of the Motor Vehicle Financial Responsibility Law, and does not offend public policy, it is unnecessary to determine whether the provisions in the policy issued by appellee concerning setoffs are valid and enforceable against a class two insured.[11]

### JUDGMENT AFFIRMED.

**10.** *See:* Remarks of Rep. Dawida, House Journal Dec. 14, 1984, pg. 2244 ("The escalation of costs has come in a number of ways: one, from court decisions that could never have been foreseen by those in the legislature nine years ago who passed the no-fault law...."); Remarks of Rep. Bowser, House Journal Dec. 13, 1983, pg. 2151; Remarks of Rep. Daiwda, Dec. 13, 1983, pg. 2151; Remarks of Rep. DeVerter, House Journal Dec. 13, 1983, pg. 2149 and Dec. 14, 1983, pg. 2244.

**11.** We note that the Pennsylvania Insurance Department's Guidelines For Filings Under Motor Vehicle Financial Responsibility Law provide at C–6: "Policies may not provide for any reduction of uninsured motorist or underinsured motorist benefits because of any first party benefits paid.... Policies may provide that a person's losses and damages resulting from injuries due to an accident with an uninsured/underinsured motorist will be reduced by any amounts received from the uninsured/underinsured motorist in determining the amount of uninsured/underinsured benefits payable to that person."