504

## Lytle v. Allstate Insurance Co.

*William J. Kelly, Robert LeSuer* and *John R. Falcone,* for petitioner.

*R. W. Mutzabaugh,* for respondent Allstate Insurance Co.

*James H. DeVittorio,* for respondent Nationwide Mutual Fire Insurance Co.

*Robert H. Taft,* for respondent Travelers Indemnity Co.

LEVIN, *J.,* November 29, 1988 — This matter is before the court on a petition to compel arbitration filed by plaintiff along with the objections thereto.

Although there might have been some question whether this court should hear and make a determination on the principal issue of the instant matter as opposed to letting the arbitrator make such determination, this question was resolved when all parties agreed by written stipulation that the court could originally determine the subject legal issue. Since the arbitration clause in question is contractual in nature, there is no question the parties had the right to modify and limit the power of the

arbitrator. Also, a determination of Allstate's rights on this issue consequently affects the rights of the remaining parties to this lawsuit, namely Nationwide Mutual Fire Insurance Company and Travelers Indemnity.

The facts of the case are as follow. On July 13, 1985, Jane E. Lytle, petitioner's decedent, was fatally injured in a one-vehicle accident. At the time of the accident, decedent was a passenger in a van owned and operated by Michael J. Holjencin. Apparently Ava DeLong was seated on Holjencin's lap and partially operated the car at the time of the accident.

The following insurance policies were in effect at the time of the accident:

(1) Michael J. Holjencin was covered by an Allstate Insurance Company policy providing liability and underinsured motorist coverage of $100,000.

(2) Ava DeLong was covered by Nationwide Mutual Fire Insurance Company with liability limits of $50,000 and underinsured motorist coverage of $25,000.

(3) Jane Lytle was covered by a policy with Travelers Indemnity Company, providing $100,000 in underinsured motorist coverage.

The insurance carriers for Michael Holjencin and Ava DeLong paid the full amount of liability coverage to Lytle's estate. However, plaintiff reserved its right to pursue the various insurance companies under the underinsured motorist coverage. Petitioner's decedent has filed a petition to compel arbitration against respondent Allstate Insurance Company seeking to recover underinsured motorist benefits arising out of the accident. The respondent Allstate now asks to be stricken as a party in the arbitration process.

The legal issue before the court is whether a passenger who is killed in a one-vehicle accident may recover both liability and underinsured motorist benefits from the same carrier under the same policy where the language of the instant policy does not expressly prohibit such recovery.

The law based on these specific facts has not been decided by an appellate court in the Commonwealth of Pennsylvania. One case in which the Pennsylvania Superior Court discussed a similar matter was *Wolgemuth v. Harleysville Mutual Insurance Co.*, 370 Pa. Super 51, 535 A.2d 1145 (1988). However, the factual situation in *Wolgemuth, supra,* was different from the present case because of the express contract language in the policy involved in *Wolgemuth, supra. Wolgemuth* defined "underinsured vehicle" in relevant language as follows:

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or *underinsured motor vehicle* because of bodily injury:

"(1) Sustained by a covered person; and

"(2) Caused by an accident.

*"Covered person* as used in this endorsement means:

"(1) You and any family member.

"(2) Any other person *occupying your covered auto.*

"(3) Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in (1) or (2) above.

*"Underinsured motor vehicle* means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the

accident but its limit for bodily injury liability is not enough to pay the full amount the *covered person* is legally entitled to recover as damages.

. . .

"In addition, neither 'uninsured motor vehicle' nor '*underinsured motor vehicle*' includes any vehicle or equipment:

"(1) Owned by or furnished or available for the regular use of you or any family member." *Wolgemuth, supra.*

The policy of insurance at bar issued by Allstate contains no such express exclusion with respect to the definition of "underinsured motor vehicle." The Allstate policy contains the following language:

"We will pay damages for bodily injury, sickness, disease or death which a person insured is legally entitled to recover from the owner or operator of an uninsured or underinsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured or underinsured auto.

. . .

"Persons insured —

"(1) You and any relative who resides in your household.

"(2) Any person while occupying your insured auto, and

"(3) any other person who is legally entitled to recover because of bodily injury to you, a relative who resides in your household, or an occupant of your insured auto.

. . .

"An underinsured auto is:

"A motor vehicle which has bodily injury liability protection in effect at the time of the accident, but its limit for bodily injury liability is less than the

damages the person insured is legally entitled to recover.

. . .

"An underinsured auto is not:

"An uninsured auto." *Allstate Uninsured Motorists Insurance Coverage SS Part II*, Pa. Amendatory Endorsement.

Inasmuch as there is no controlling appellate court decision, in writing this opinion the court will be traveling on a newly opened highway not previously traversed by the public. The court in *Wolgemuth, supra,* recognized this when they stated they were not making or following any ruling outside the facts before them.

"We are not here asked to determine, and express no opinion upon, whether an insured, as that term is defined by the Motor Vehicle Financial Responsibility Law, could, under certain circumstances, recover under both the liability and underinsured motorist provisions of a single policy." *Wolgemuth, supra.*

Thus, the court is left with a case of first impression.[1] In such a case, the court, however, is not without benefit of any aids to be of assistance to it in making it ruling. In cases such as this the court will look to many items including but not limited to statutory construction and the legislative history of the subject act. As stated in *Wolgemuth, supra:*

"Section 1921 of the Statutory Construction Act also requires that we consider the 'consequences of a particular interpretation.' 1 Pa.C.S. §1921(c)(6). Were we to declare the exclusion at issue void and permit appellant to convert the underinsured mo-

---

1. Because of the uniqueness of this case, the court upon the request of any party involved in the litigation would agree to certify this matter for appeal.

torist coverage into third party liability coverage, our decision would necessarily effect an increase in the cost of the mandatory underinsured motorist coverage. As heretofore observed, one purpose of the legislature in enacting the Motor Vehicle Financial Responsibility Law was to reduce the cost of purchasing motor vehicle insurance, an objective we would neglect were we to accept the invitation of appellant to rewrite the Motor Vehicle Financial Responsibility Law under the guise of liberal interpretation." *Wolgemuth, supra.*

Hence, the legislative history and statutory construction possibly point the court to the stance that the petition in controversy is inappropriate. Nevertheless, this was the only resource available to the court. There were additional tools which the court could use in entering an order such as language contained in opinions of appellate courts. In the well known text *The Judicial Process,* by Ruggero J. Aldisert, the following quote appears:

"In *The Supreme Court and the Uses of History* 13 (1969), Professor Miller quotes Chief Justice Harlan F. Stone: 'I can hardly see the use of writing judicial opinions unless they are to embody methods of analysis and of exposition which will serve the profession as a guide to the decision of future cases. If they are not better than an excursion ticket, good for this day and trip only, they do not serve even as protective coloration for the writer of the opinion and would much better be left unsaid.' " Aldisert, Ruggero J., *The Judicial Process* 801 (West Publishing Co., 1976)

The appropriate language in *Wolgemuth,* reads as follows:

"Underinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person not the vehicle. Here, however, the

decedent passenger's heirs have already collected under the liability coverage of the insurer of the Stein car. To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage." *Wolgemuth, supra.*

Admittedly, this language is possibly only dicta.[2] Yet, when considered with legislative history and statutory construction principles, the court reaches the inescapable conclusion that the petition to compel arbitration should not be granted. Just as stated in *Wolgemuth,* there are many similarities to the present case.

"As a class two beneficiary, Gail M. Wolgemuth had no recognizable contractual relationship with the insurer of the vehicle, had paid no premiums for such coverage, and had no reasonable expectations as to coverage under the policy issued by appellee." *Wolgemuth, supra.*

It is conceded that the petitioner is correct in his argument that the subject exclusion clause is much different in the instant case than in *Wolgemuth, supra.* Further, the petitioner is also correct when he states where there is ambiguity, the ambiguity must be construed against the insurance carrier who drafted the policy. Still, when those factors are balanced against public policy, legislative history and language contained in *Wolgemuth,* they fail to meet muster. When the court conducted a balancing test between the words of the contract and the appellate court's language in *Wolgemuth, supra,* on

2. The court has to assume that this language was put in for a specific purpose, which was to alert the trial courts of its thought in these types of cases. Otherwise, it would not have been mentioned by the Superior Court in its opinion.

statutory intention and legislative history, the scales weighed in favor of the respondents. Therefore, that scale allows this court to expand the decision of *Wolgemuth, supra,* to cover the present factual situation.

## ORDER

And now, November 29, 1988, it is hereby ordered, adjudged and decreed that the petitioner's request to compel arbitration is denied and the objections to same filed by respondents are sustained.