**CONTINENTAL INSURANCE COMPANY, Plaintiff,**

v.

**Leon KUBEK, Defendant.**

**No. CIV. A. 99–4749.**

United States District Court, E.D. Pennsylvania.

March 9, 2000.

---

Timothy Costello, Christine H. Sheridan, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Plaintiff.

Wayne S. Sander, Bock & Finkelman, Philadelphia, PA, for Defendant.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

Before the court are cross-motions for summary judgment submitted by the plaintiff and the defendant in this declaratory action pertaining to insurance coverage. Because the court finds that the insurance policy in question permits the defendant to recover both underinsured motorist benefits and liability benefits in some circumstances, the defendant's motion will be granted.

*Stipulated Facts* [1]

On April 17, 1997, the defendant Leon Kubek was a passenger in an automobile driven by his wife, Marsha Kubek, which was involved in a collision with another vehicle driven by Nancy Moritz. The Kubeks' vehicle was covered by an insurance policy issued by Continental Insurance Company, the plaintiff. Moritz's vehicle was covered by an Allstate Insurance Company policy with bodily injury liability coverage of $100,000 per person. In March 1998, the Kubeks filed suit against Moritz in the Philadelphia County Court of Common Pleas. Moritz subsequently joined Marsha Kubek as an additional defendant.

Prior to any judicial determination of liability, the underlying action was settled. Allstate agreed to pay Leon Kubek $62,645 and Marsha Kubek $6,300 under its bodily injury liability coverage. Continental agreed to pay Leon Kubek $11,055 in bodily injury liability coverage under the Continental policy on behalf of Marsha Kubek. As part of the settlement, the Kubeks executed a General Release that released Nancy Moritz, Allstate Insurance Company, and Marsha Kubek from further claims. The General Release contained a provision stating,

---

1. All of the facts are taken from the Joint Stipulation of Stipulated Facts submitted by the parties.

Notwithstanding any other Provision herein to the contrary, it is expressly agreed that this Release shall not operate as a bar to any claim or cause of action Releasors may have against CNA Insurance Company for underinsured motorist benefits arising out of the subject motor vehicle accident of April 17, 1997.

General Release ¶ 10 (Stip. Facts Ex. B). Accompanying the General Release was a transmittal letter from the Kubeks' attorney that included the following,

As you will note, I have deleted CNA Insurance Company as a "released party" and added an additional paragraph to the Release concerning the claim of my clients against CNA for underinsured motorist benefits. These modifications preserve the UIM claim, which comports with our understanding in settling the third party action.

Transmittal Letter (Stip. Facts Ex. B).

Mr. Kubek now seeks underinsured motorist (UIM) benefits from Continental. In response, Continental filed this suit for a declaratory judgment that Mr. Kubek may not recover UIM benefits under its policy.

*Discussion* [2]

Continental argues that the so-called "family vehicle exclusion" included in its policy means that the vehicle owned by the Kubeks may not itself be considered an "underinsured vehicle" and that Mr. Kubek is therefore precluded from receiving UIM benefits. Mr. Kubek argues that the family vehicle exclusion is irrelevant because Ms. Moritz's automobile was the underinsured vehicle. Mr. Kubek contends that Continental is only entitled to a set-off for amounts paid by Allstate and Continental under their respective liability policies. He also argues that the terms of the release establish that he has a right to recover UIM benefits from Continental.

▇▇▇ Pennsylvania has well-established rules regarding the interpretation of such coverage disputes. Ordinarily the court rather than the jury interprets the insurance contract with the goal of determining the intent of the parties as indicated by the language of the policy itself. *See, e.g., Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234, 1235 (1994). When the language of the contract is unambiguous, the court must give effect to that language. *See id.; Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). A provision is ambiguous if "reasonably intelligent" people "on considering it in the context of the entire policy would honestly differ as to its meaning." *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982) (citations omitted). Ambiguous language must be strictly construed against the insurer, *see, e.g., Pempkowski v. State Farm Mut. Auto. Ins. Co.*, 451

---

**2.** Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See id.* However, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

Cross-motions for summary judgment are governed by the same standards, *see Appelmans v. Philadelphia*, 826 F.2d 214, 216 (3d Cir.1987): "[E]ach motion must be considered separately, and each side must still establish a lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." *Nolen v. Paul Revere Life Ins. Co.*, 32 F.Supp.2d 211, 213 (E.D.Pa.1998).

Pa.Super. 61, 678 A.2d 398, 401 (1996), *Standard Venetian Blind Co.*, 469 A.2d at 566, but the court should read policy provisions so as to avoid ambiguity and not twist the language or rewrite the contract to create doubts where none exist. *See Northbrook Ins. Co.*, 690 F.2d at 372.

The policy provision on which Continental relies in arguing that Mr. Kubek may not recover UIM benefits is found in the "definitions" section of the Kubeks' UIM endorsement:

> **Underinsured motor vehicle** means a land motor vehicle or trailer of any type of which a **bodily injury** liability bond or policy applies at the time of the **accident** but the amount paid for **bodily injury** under that bond or policy to a **covered person** is not enough to pay the full amount the **covered person** is entitled to recover as damages.

> . . . .

> However, **underinsured motor vehicle** does not include any vehicle or equipment:

> a.  Owned by or furnished or available for the regular use of you or any **family member**.

Stipulated Facts ¶¶ 17–18.[3]

Continental maintains that "[b]ecause Mr. Kubek was not riding in an underinsured vehicle at the time of the accident, his UIM claim must, by definition, fail." Plf.Mot. for Summ.J. at 7. Mr. Kubek does not dispute that the vehicle in which he was riding while he was injured was a vehicle "[o]wned by or furnished or available for the regular use of you or any family member" and agrees that if he were claiming that this vehicle were underinsured, the family vehicle exclusion would apply.  He argues, however, that he is seeking UIM benefits from Continental because of the insufficiency of Moritz's coverage under her own policy.

An oft-cited passage from *Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988), outlined the goal of Pennsylvania's UIM laws:

> The purpose of underinsured motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage to compensate for the injuries caused by his negligence.  Thus, an insured who purchased $100,000.00 of liability coverage to protect others from his negligence, must, by law, be offered the option of purchasing up to $100,000.00 of underinsured motorist coverage to protect himself and his additional insureds from the risk that they will be severely injured by a negligent driver who has liability coverage in an amount insufficient to fully compensate them for their injuries.

> The language of the statute itself suggests that underinsur[ed] motorist coverage requires the existence of at least two applicable policies of motor vehicle insurance. . . . Thus, the statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a second policy, under which the injured claimant is either an insured or a covered person.  It is the second policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Id.* at 1149.  Based on this analysis, the *Wolgemuth* court held that the estate of a passenger killed in a single-vehicle accident that had already recovered the limits of the driver's liability insurance could not

---

**3.**  Although the parties have identified the relevant paragraphs quoted above as paragraph five of the UIM endorsement, the court notes that this definition is actually found at paragraph three of the insurance policy that is attached as Exhibit A to the stipulated facts.

seek UIM benefits under the same policy when that policy explicitly stated that an "underinsured" vehicle could not be the insured vehicle. *See id.* at 1149.[4]

Subsequently, the Pennsylvania courts addressed various permutations of the *Wolgemuth* facts. In *Newkirk v. United Services Automobile Association*, 388 Pa.Super. 54, 564 A.2d 1263 (1989), the court held that a so-called "class one" beneficiary who was injured in a single-vehicle accident "is precluded from recovering both liability and underinsured motorist coverage under an automobile insurance policy which excludes family-owned vehicles from the definition of underinsured vehicles." *Id.* at 1263. In *Sturkie v. Erie Ins. Group*, 407 Pa.Super. 117, 595 A.2d 152 (1991), the court held that a claimant was precluded from obtaining liability and UIM benefits under a single policy even in the absence of a provision excluding the insured vehicle from itself being designated as an "underinsured" vehicle. *See id.* at 157–58;[5] *see also Cooperstein v. Liberty Mut. Fire Ins. Co.*, 416 Pa.Super. 488, 611 A.2d 721, 726–27 (1992) (reiterating prior holdings and finding that set-off language in insurance policy did not create affirmative right to recover both liability and UIM benefits from the same policy in a similar situation).

■ Relying on these and similar cases,[6] Continental argues that Pennsylvania law

clearly holds that a claimant can never recover liability benefits and UIM benefits from the same policy. This interpretation misses a crucial component of these holdings: in each case, only one policy was at issue. In the present case, Mr. Kubek seeks UIM benefits from his own Continental policy because of Ms. Moritz's underinsured status. Thus, the holdings that more properly govern the instant case are those addressing the propriety of set-offs in joint tortfeasor situations.

For example, in *Pempkowski*, 678 A.2d at 398, Stella Pempkowski was injured when the car her husband was driving was involved in an accident with a "phantom" motorist. The Pempkowskis' insurance policy provided for liability limits of $25,000 per person and uninsured motorist benefits of $15,000 per person. Mrs. Pempkowski filed a third-party claim against her husband, and the insurance company paid the liability limits. Because these amounts were insufficient to cover her injuries, Mrs. Pempkowski sought uninsured motorist benefits on the theory that the unidentified other driver shared liability. The insurance company argued that it was not obligated to pay any benefits because of a set-off provision in the policy, which reduced any uninsured motorist coverage by amounts paid to an insured for "bodily injury under the liability coverage of the policy." *Id.* at 400. That is, because the fully-paid liability limits

---

**4.** As an individual whose claim was based solely on her occupancy of the vehicle during the accident, the decedent in *Wolgemuth* was a "class two" beneficiary who had no contractual relationship with the insurance company. *See Wolgemuth*, 535 A.2d at 1149–50.

**5.** Although there were two vehicles in the *Sturkie* accident, the injured individual in that case attempted to argue that the vehicle in which she was riding was itself underinsured.

**6.** Continental also cites several federal cases for the same proposition: *Myers v. State Farm Insurance Company*, 842 F.2d 705 (3d Cir. 1988); *Ohio Cas. Group of Ins. Companies v. Ford*, Civ. A. No. 88–6503, 1989 WL 6599 (E.D.Pa. Jan. 26, 1989); *Aetna Cas. and Sur. Co. v. Hertz Corp.*, Civ. A. No. 91–5238, 1993 WL 276835 (E.D.Pa. July 21, 1993); and *Pat-*

terson v. Nationwide Mut. Ins. Co., Civ. A. No. 93–1033, 1993 WL 405846 (E.D.Pa. Sept. 29, 1993). Three of these cases are clearly inapposite: *Myers* and *Ford* addressed claimants who attempted to obtain liability and UIM benefits from the tortfeasor's policy in single-vehicle accidents, and *Patterson* involved a plaintiff pedestrian hit by a car driven by her husband. *Aetna* did address a joint tortfeasor situation, but the factual circumstances were quite different. Much of the dispute in that case was whether a payment made by the injured person's insurance company was a liability payment to the insurance company of one of the tortfeasors or whether it was an indirect payment to the injured woman herself.

were higher than the uninsured motorist benefits, Mrs. Pempkowski was entitled to nothing.

The court held that the set-off did not violate public policy, but, for present purposes, the more important aspect of the case is its acknowledgment that, in joint tortfeasor situations, a claimant is not always precluded from seeking liability and un- or underinsured motorist benefits from the same policy. As that court noted, depending on the type and amount of insurance purchased, "in many instances insureds will have sufficient uninsured motorist coverages available that application of a set off clause such as the one at issue in the instant case will not result in the denial of all uninsured motorist benefits[.]" *Id.* at 403 n. 4; *see also State Farm Mut. Auto. Ins. Co. v. Broughton,* 423 Pa.Super. 519, 621 A.2d 654, 654 (1993) (holding, in similar factual scenario, that it was appropriate for an insurer to "reduce, dollar for dollar, the uninsured motorist coverage payments made to a guest passenger with liability coverage payments made under same policy to the same guest passenger if both the host driver and another uninsured driver are jointly liable for the injuries suffered by the passenger"); *Jeffrey v. Erie Ins. Exchange,* 423 Pa.Super. 483, 621 A.2d 635 (1993) (holding that set-off in similar situation was also permissible).[7]

These holdings are actually consistent with the cases cited previously, such as *Wolgemuth,* even though those cases stated that one may not recover liability and underinsured motorist benefits from the same policy. As subsequent Pennsylvania cases have acknowledged, the true holdings of *Wolgemuth* and its progeny are

that an individual should not be able to convert the relatively inexpensive UIM insurance into the more expensive liability insurance simply by undercovering him- or herself for liability and then claiming that the vehicle was "underinsured."

The holding in *Paylor,* 640 A.2d at 1234, is instructive. The decedent in *Paylor* was killed in a single-vehicle accident in which her husband was driving. The decedent was a named insured under the policy that covered the vehicle in the accident, and her estate recovered full liability limits. Her estate then sought to obtain UIM benefits under a separate policy covering other vehicles. The insurer for the other vehicles denied coverage, relying on an exclusion that stated that an "underinsured vehicle" could not be any family car. *See id.* at 1235. The court held that the insurer was not obligated to pay UIM benefits, stating that had the decedent wished to insure herself more extensively for the risk of her own or her husband's negligence, she could have purchased more extensive liability coverage. "Allowing the 'family car exclusion' to bar coverage in cases where a plaintiff is attempting to convert underinsured coverage into liability coverage is a limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL." *Id.* at 1240; *see also Marroquin v. Mutual Ben. Ins. Co.,* 404 Pa.Super. 444, 591 A.2d 290 (1991) (acknowledging that *Wolgemuth* and *Newkirk* addressed situations in which a plaintiff was attempting to convert UIM coverage into liability coverage); *Newkirk,* 564 A.2d at 1266 (noting that plaintiff had not paid premiums for more extensive liability coverage and so could claim no ex-

---

**7.** Some comments on plaintiff's characterization of these cases are in order. Continental states that in *Jeffrey,* the court held that "a mother, as a guest passenger, could not recover from both her daughter's liability policy and underinsured motorist policy even where both drivers were comparatively negligent[.]" Plf.Mot. for Summ.J. at 12. As in *Pempkowski,* the reason the passenger could not recover was because the policy in question had $100,000 in liability and $100,000 in unin-

sured motorist coverage. Thus, when the set-off was applied, the amount recoverable under underinsured coverage was zero. The same result occurred in *Broughton* because the liability limit was $50,000 and the uninsured benefits were only $25,000: application of the set-off meant that there was nothing to recover. In the present case, the underinsured motorist benefits at issue are $300,000, well above the amounts already paid.

pectation that she was entitled to equivalent coverage through UIM benefits).

In short, although Mr. Kubek received a liability payment from Continental, it was based only on his wife's apparent role in the accident. It has no effect on his ability to claim UIM benefits based on Ms. Moritz's underinsured status. As there are two policies in play, the prohibition on recovering from a single policy is not at issue; Mr. Kubek is not attempting to convert his UIM coverage into liability coverage.[8]

As the court rules that neither the plain terms of the policy nor case law prevents the collection of both UIM and liability in this situation, the court does not reach defendant's alternative argument that interpreting the insurance policy as does plaintiff would violate public policy.

*Conclusion*

The Kubeks' insurance policy does not prevent Mr. Kubek from receiving UIM benefits in the present situation. Obviously, the court makes no comment as to whether Mr. Kubek should actually receive such benefits under other policy language; the court rules only that the family car exclusion is not itself a bar to recovery. Accordingly, the plaintiff's motion will be denied, and the defendant's will be granted.

An appropriate order follows.

### ORDER

**AND NOW**, this 9th day of March, 2000, upon consideration of the Cross–Motions for Summary Judgment, it is hereby **OR-**DERED that Defendant's Motion is **GRANTED**, and Plaintiff's Motion is **DENIED.**

---

**8.** Although both parties focused heavily on the release and a set-off provision, these issues are only indirectly relevant. The plaintiff argues that the court should not construe either the terms of the release or a policy provision providing for set-off of amounts already received as creating an affirmative right to coverage. The court does not understand defendant to take either position. Rather, defendant suggests, correctly, that the set-off provision and the release provide some indication that the policy and the parties contemplated a situation in which Mr. Kubek might be able to recover both UIM and liability benefits. Mr. Kubek's primary argument on this point was that Continental could not claim that the release itself foreclosed recovery of UIM benefits from Continental, a stance ultimately not argued by Continental. As to the set-off issue, Mr. Kubek does not quarrel with the notion that he must give Continental a "credit" for the liability payments already made to him by Continental, *see* Def.Mot. for Summ.J. at 3, as well as for the liability payment made on behalf of Mrs. Kubek. *See id.* at 5–6.