564 A.2d 1263

**Sandra C. NEWKIRK, Appellant,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION,
Charles G. Newkirk.**

Superior Court of Pennsylvania.

Argued May 18, 1989.

Filed Aug. 8, 1989.

Reargument Denied Oct. 20, 1989.

Mark H. Scoblionko, Allentown, for appellant.

Eugene J. Maginnis, Philadelphia, for United Services, appellee.

Before CIRILLO, President Judge, and ROWLEY and HESTER, JJ.

CIRILLO, President Judge:

The issue presented in this appeal is whether a "class one" beneficiary,[1] who was injured in a motor vehicle accident involving only the insured's vehicle, is precluded from recovering both liability and underinsured motorist coverage under an automobile insurance policy which excludes family-owned vehicles from the definition of underinsured vehicles.

Appellant, Sandra C. Newkirk, was riding as a passenger in a car owned and operated by her husband, Charles Newkirk, when her husband lost control of the car. The car went off the roadway and struck three tree trunks. While Mrs. Newkirk survived the crash, she sustained serious personal injuries.

Mr. Newkirk was insured at the time of the crash by appellee, United States Automobile Association (USAA). His policy with USAA provided him with $300,000 of liability coverage per person. An exception in the policy, however, limited liability coverage for bodily injury sustained by family members to $15,000.

Mrs. Newkirk filed suit against her husband in the Court of Common Pleas of Lehigh County to recover for the injuries she sustained in the accident. On behalf of Mr. Newkirk, USAA tendered a settlement offer to Mrs. New-

1. Class one beneficiaries consist of "the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either." *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 338, 473 A.2d 1005, 1010 (1984).

kirk in the amount of $15,000. This figure represented the maximum amount of liability coverage provided for family members under Mr. Newkirk's policy with USAA. Mrs. Newkirk refused to accept USAA's settlement offer.

Mrs. Newkirk subsequently made a settlement demand to USAA for $300,000, which was the maximum amount of underinsured motorist coverage available per person under Mr. Newkirk's policy. USAA rejected this demand based on the following definition provision in its policy (hereinafter referred to as the "family car exclusion"):

> [N]either "uninsured motor vehicle" nor "underinsured motor vehicle" includes any vehicle ... [o]wned by or furnished or available for the regular use of you or any family member.[2]

Mrs. Newkirk then filed the instant action against USAA in the Court of Common Pleas of Lehigh County, seeking a declaration of her right to recover underinsured benefits pursuant to her husband's policy with USAA.[3] When pleadings closed, the parties filed cross-motions for summary judgment. Both parties agreed that there were no disputed issues of fact to be resolved and that the only issue in dispute was whether Mrs. Newkirk was potentially entitled to receive underinsured motorist benefits for her injuries under Mr. Newkirk's policy with USAA.

2. Mr. Newkirk's policy with USAA defines "you" and "your" as "[t]he named insured shown in the Declarations; and [t]he spouse if a resident of the same household." The policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."

3. Mrs. Newkirk's complaint contained the following allegation:
Plaintiff disputes the contention of the Defendant that the limits of liability coverage under the motor vehicle policy in question and provided for the benefit of Charles G. Newkirk as a result of this accident are only $15,000.00, but, *for purposes of this action only, and in order to receive an adjudication of her rights under the motor vehicle policy in question, Plaintiff,* without being bound thereby in any future actions, *assumes that the limits of liability under the motor vehicle policy in question for the benefit of Charles G. Newkirk is in the amount of only $15,000.00.* (emphasis added).
For purposes of this appeal, therefore, we will assume that the limit of liability protection afforded Mrs. Newkirk under her husband's policy with USAA is $15,000.

On December 8, 1988, the Honorable John E. Backenstoe ruled that Mrs. Newkirk was not entitled to underinsurance coverage pursuant to her husband's insurance policy, and entered an order denying Mrs. Newkirk's motion for summary judgment and granting USAA's motion for summary judgment. Shortly thereafter, Mrs. Newkirk filed this appeal.

The issue raised in this appeal is an issue of first impression which was specifically left unanswered by our court en banc in *Wolgemuth v. Harleysville Mutual Insurance Co.,* 370 Pa.Super. 51, 535 A.2d 1145 (1988). In *Wolgemuth,* we addressed the issue of whether a guest passenger injured in a single vehicle accident, who had already recovered the maximum amount of liability coverage under the insurance policy carried by the host of the vehicle, was entitled to recover underinsured motor vehicle coverage under the same policy. The policy, like the policy at issue in the present case, excluded family cars from the definition of underinsured motor vehicles.[4]

The appellant[5] in *Wolgemuth* argued that because the legislature made underinsured motorist coverage mandatory, any policy provision such as the family car exclusion, which operates to deny a claimant underinsured motorist benefits, violates the public policy of this Commonwealth. *Id.,* 370 Pa.Superior Ct. at 56, 535 A.2d at 1147. We rejected this argument, finding that it was based on a misapprehension of the nature of underinsured motorist coverage.

In reaching this conclusion, we reviewed the history behind the legislature's decision to make underinsured motorist coverage mandatory. We explained that prior to the

4. The policy in *Wolgemuth, supra,* stated:
     [N]either "uninsured motor vehicle" nor "underinsured motor vehicle" includes any vehicle or equipment:
        1. Owned by or furnished or available for the regular use of you or any family member.
   *Wolgemuth,* 370 Pa.Super. at 56, 535 A.2d at 1148.

5. The appellant in *Wolgemuth,* Galen H. Wolgemuth, was the administrator of the estate of Gail M. Wolgemuth, who was the guest passenger in the automobile involved in the accident.

passage of the MVFRL, "underinsured motorist coverage, unlike uninsured motorist coverage, was not required in Pennsylvania or regulated by statute." *Id.*, 370 Pa.Superior Ct. at 56, 535 A.2d at 1148. Because of this, those claimants who purchased uninsured motorist coverage were in a better position when they were involved in a car accident with an uninsured tortfeasor rather than an underinsured tortfeasor. If they were hit by an uninsured tortfeasor, they could recover from their uninsured motorist benefits; however, if they were hit by an underinsured tortfeasor, they could not recover from that coverage but were limited to recovering the minimal amount of benefits available to them under the tortfeasor's insurance. The legislature enacted the underinsured motorist coverage in the MVFRL to resolve this anomaly.

With this history in mind, we expounded on the purpose of underinsured motorist coverage:

The purpose of underinsured motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage to compensate for the injuries caused by his negligence. Thus, an insured who purchases $100,000.00 of liability coverage to protect others from *his* negligence, must, by law, be offered the option of purchasing up to $100,000.00 of underinsured motorist coverage to protect himself and his additional insureds from the risk that they will be severely injured by a negligent driver who has liability coverage in an amount insufficient to fully compensate them for their injuries.

*Id.*, 370 Pa.Superior Ct. at 58, 535 A.2d at 1149 (emphasis in original). We also noted that the language utilized by the legislature in section 1731(c) of the Motor Vehicle Financial Responsibility Law (MVFRL) suggests that underinsured motorist coverage requires the existence of at least two policies of motor vehicle insurance. *Id.* Discussing this observation, we stated:

An underinsured motor vehicle, must, by definition, be an insured vehicle. Thus, the statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of the liability coverage (which is ultimately insufficient to fully compensate the victim), and a second policy, under which the injured claimant is either an insured or a covered person. It is the second policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Id.* Based on our findings, we held that the public policy of this Commonwealth was not violated by the exclusion of vehicles owned, furnished, or available for the regular use of an insured or the insured's family from the definition of underinsured vehicles.

We narrowed our holding in *Wolgemuth,* however, by including the following comments in our discussion:

We are not here asked to determine, and express no opinion upon, whether an insured, as that term is defined by the Motor Vehicle Financial Responsibility Law, could, under certain circumstances, recover under both the liability and underinsured motorist provisions of a single policy. [The passenger of the host vehicle in this case] was a class two beneficiary of the policy issued by appellee Harleysville.[6] As a class two beneficiary, Gail M. Wolgemuth had no recognizable contractual relationship with the insurer of the vehicle, had paid no premiums for such coverage, and had no reasonable expectations as to coverage under the policy issued by appellee. To permit appellant to recover underinsured motorist benefits under the circumstances of this case would be to

6. A class two beneficiary is any individual whose entitlement to coverage under an automobile insurance policy is based solely upon his or her occupation of the insured vehicle at the time of the accident. *Utica Mutual Insurance Company, supra,* 504 Pa. at 338, 473 A.2d at 1010.

convert essentially first party underinsured motorist coverage into third party liability coverage.

*Id.,* 370 Pa.Superior Ct. at 59–60, 535 A.2d at 1149–50 (footnote omitted). With the inclusion of these comments, we expressly limited the applicability of our holding in *Wolgemuth* to class two beneficiaries and specifically left open the question with which we are now presented, namely whether a class one beneficiary such as Mrs. Newkirk could recover underinsured motorist benefits under the same insurance policy from which she received liability benefits.

Mrs. Newkirk contends that we should answer this question in the affirmative. The rationalization she uses to convince us to adopt this position is based in part on the passage from *Wolgemuth* which we quoted directly above.

Mrs. Newkirk argues that her status as a class one beneficiary distinguishes her in several respects from the passenger claiming underinsured coverage in *Wolgemuth.* As a class one beneficiary, she states, she had a recognizable contractual relationship with USAA. In addition, unlike the passenger in *Wolgemuth,* she and her husband paid premiums to USAA for the coverage from which she now seeks to recover. Moreover, she and her husband had a reasonable expectation that she was entitled to coverage under her husband's policy with USAA. These differences between the passenger in *Wolgemuth* and herself, she asserts, render the reasoning which we utilized in *Wolgemuth* to uphold the validity of the "family car exclusion" inapplicable in determining the validity of the exclusion in this case.

Mrs. Newkirk states that in this case it would be unconscionable to uphold the validity of the "family car exclusion" because it would allow USAA to refrain from paying underinsured motorist benefits despite full premiums having been paid for that coverage. In addition, if the exclusion is enforced, she asserts, the scheme provided by the MVFRL which requires underinsured motorist coverage to be contained in all policies issued in Pennsylvania would be

defeated. Furthermore, section 1731(a) of the MVFRL[7] would be violated since coverage would not be provided by USAA in an amount equal to the liability coverage provided under its policy. Consequently, she states, this court must rule that the "family car exclusion" in her husband's policy with USAA is unenforceable, and hold that she is entitled to recover underinsured motorist benefits for her injuries under USAA's policy.

Having reviewed the record, the MVFRL, and relevant case law, we find ourselves unpersuaded by these arguments and hold, accordingly, that Mrs. Newkirk is not entitled to recover underinsured benefits pursuant to the same policy from which she recovered liability coverage. We reach this conclusion for several reasons.

First, Mrs. Newkirk's assertion that it would be unconscionable for us to uphold the "family car exclusion" in Mr. Newkirk's policy because it would allow USAA to refrain from paying underinsured motorist benefits despite full premiums having been paid for such coverage is specious. While the Newkirks may have paid their premiums in full for Mr. Newkirk's policy with USAA, they paid only for that coverage which is provided for in the policy. Mr. Newkirk's policy specifically excludes automobiles owned by Mr. Newkirk or any family member from the definition of underinsured vehicles. Thus, contrary to Mrs. Newkirk's contention, the Newkirks did not pay USAA for the coverage which Mrs. Newkirk is now seeking to recover.

In addition, the language employed by USAA to exclude family cars from the definition of underinsured vehicles in Mr. Newkirk's policy is clear, unambiguous and conspicuous. Any expectation, therefore, which the Newkirks had that they were paying for underinsured motorist coverage

7. Section 1731(a) of the MVFRL provides, in pertinent part:
   (a) **General rule.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth ... unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage....
   75 Pa.C.S. § 1731(a) (Supp.1988).

under the circumstances present in this case was unreasonable. *See Votedian v. General Accident Fire and Life,* 330 Pa.Super. 13, 17, 478 A.2d 1324, 1326 (1984) (when policy expressly denies coverage, it would be disingeneous, if not absurd, to hold that insured has a "reasonable expectation" that he or she is covered). *See also Neil v. Allstate Insurance Company,* 379 Pa.Super. 299, 311, 549 A.2d 1304, 1309–10 (1988) ("Where coverage is clearly worded and conspicously displayed, failure to read a limitation or to understand it is no defense.")

Furthermore, the arguments which Mrs. Newkirk makes with regard to the MVFRL are meritless. She argues that the family car exclusion in her husband's policy should be declared void because its enforcement would defeat the purpose of the underinsured motorist coverage provisions of the MVFRL, which requires underinsured motorist benefits to be contained in all policies issued in Pennsylvania. She asserts more specifically that the enforcement of the "family car exclusion" would violate section 1731(a) of the MVFRL since underinsured motorist coverage would not be provided in her husband's policy in an amount equal to the liability coverage. These arguments are similar to those arguments regarding the MVFRL which we thoroughly discussed and rejected in *Wolgemuth.* They are different in only one respect.

In *Wolgemuth,* our enforcement of the "family car exclusion" did not deny underinsured motorist coverage to the appellant, but rather required him to pursue such benefits through a policy of insurance under which the passenger of the host vehicle was insured. In this case, however, our enforcement of the exclusion provision in Mr. Newkirk's policy will prevent Mrs. Newkirk from recovering any underinsured motorist benefits to compensate her for her injuries. The reason for this difference is that Mrs. Newkirk is insured for automobile accidents through her husband's policy with USAA. Unlike the passenger in *Wolge-*

*muth,* she has no automobile insurance policy of her own.[8]

This difference in the results of our enforcement of the "family car exclusion" in *Wolgemuth* and in this case, however, does not render our analysis of the exclusion provision in *Wolgemuth* inapplicable to this case. When the legislature created the underinsured motorist coverage provisions of the MVFRL, they simply did not intend for an individual to recover third party liability benefits and first party underinsured motorist benefits from the same automobile insurance policy. *See Wolgemuth,* 370 Pa.Super. at 56–61, 535 A.2d at 1148–50 (1988).

As we explained in *Wolgemuth,* our legislature enacted underinsured motorist coverage to resolve the inequities which resulted when only uninsured motorist coverage was mandatory and a claimant who had purchased uninsured motorist coverage was involved in a car accident with an underinsured motorist rather than an uninsured motorist. Our legislature thus intended underinsured motorist coverage to operate in the same manner as uninsured motorist coverage only for motorists who were injured by underinsured motorists.

With uninsured motorist coverage, a claimant cannot recover third party liability benefits and uninsured motorist coverage from a tortfeasor's policy of insurance. The reason for this is clear. If the tortfeasor has third party

8. It is important to keep in mind in this case that we are considering whether Mrs. Newkirk is precluded from recovering both liability and underinsured motorist coverage from the *same* policy, that is, her husband's policy with USAA. We are not addressing the issue of whether the "family car exclusion" could be enforced to bar a wife's recovery of underinsured motorist benefits through her own separate automobile insurance if she was injured while riding as a passenger in her husband's vehicle, where the third party benefits which she recovered from the husband's insurance failed to pay her losses and damages. *See e.g., DeVille v. State Farm Mutual Automobile Insurance Company,* 367 N.W.2d 574 (Minn.Ct. Appeals 1985) (rule that "family car exclusion" is enforceable against plaintiff who is attempting to convert underinsured motorist coverage into liability coverage does not apply or extend to situation where wife recovered under husband-tortfeasor's "liability coverage and is now seeking underinsured motorist benefits from her own personal policy with underinsured motorist coverage purchased by her for her own individual protection.").

liability coverage from which the claimant can recover, then the tortfeasor is not uninsured and the claimant is not eligible to recover any uninsured motorist benefits. *See* 75 Pa.C.S. § 1701 (uninsured motor vehicle is a motor vehicle for which there is no liability insurance). When the claimant is entitled to recover uninsured motorist benefits because the tortfeasor is uninsured, the claimant recovers those benefits through his or her *own* policy of insurance.

Applying this manner of operation to underinsured motorist coverage, it follows logically that a claimant cannot recover third party liability benefits and underinsured motorist coverage from the same policy of insurance. Rather, the recovery of underinsured motorist coverage is dependent on the existence of two policies of insurance: the tortfeasor's policy and the claimant's policy. When a tortfeasor is underinsured, the claimant recovers third party liability benefits from the tortfeasor's insurance and supplements this recovery with the underinsured motorist benefits available through his or her *own* policy of insurance.

Therefore, despite the seemingly harsh result rendered by our enforcement of the "family car exclusion" in Mr. Newkirk's policy, our holding is consistent with the legislature's intent and purpose in enacting the underinsured motorist provisions of the MVFRL. Furthermore, our enforcement of the "family car exclusion" does not violate section 1731(a) of the MVFRL. Mr. Newkirk's policy with USAA does provide underinsured motorist vehicle benefits in an amount equal to the liability coverage included in the policy. The fact that Mrs. Newkirk cannot recover such benefits in this situation does not nullify the existence of those benefits in the policy.

Only three other jurisdictions have decided the issue involved in this case. Our holding to enforce the "family car exclusion" is supported by the decisions of two of those three jurisdictions. *See Holz v. North Pacific Insurance Company*, 53 Wash.App. 62, 765 P.2d 1306 (1988); *Pre-*

*ferred Risk Mutual Insurance Company v. Tank,* 146
Ariz. 33, 703 P.2d 580 (1985); *but see Bratcher v. National
Grange Mutual Insurance Company,* 292 S.C. 330, 356
S.E.2d 151 (App.1987) (applying state policy of construing
motor vehicle insurance statutes strictly against insurers,
court held "family car exclusion" to be invalid on basis that
legislature authorized insurance carriers only to restrict the
amount of underinsurance motorist coverage to the limits of
the liability coverage). In *Holz v. North Pacific Insurance
Company, supra,* Mrs. Holz was injured in a single car
accident involving her husband's car. After she had recov-
ered the maximum amount of liability coverage which was
available through her husband's insurance policy with
North Pacific, she sought to recover underinsured motorist
benefits through that same policy. Like USAA's policy in
the instant case, Mrs. Holz's husband's policy with North
Pacific contained a clause excluding family cars from the
definition of underinsured vehicles.

The Court of Appeals of Washington upheld the validity
of the "family car exclusion" in Mr. Holz's policy. In so
doing, the court stated:

> If Holz wishes greater protection while riding as a
> passenger in her own car, she should increase her liability
> insurance. Underinsured motorist insurance is purchased
> to protect oneself from other drivers whose liability insur-
> ance purchasing decisions are beyond one's control.
> Underinsured motorist coverage is not meant as insur-
> ance in case a person underinsures his own vehicle. The
> policy language makes that clear. To construe it as such
> would have the practical effect of transforming less ex-
> pensive underinsured motorist coverage into liability in-
> surance.

*Holz,* 53 Wash.App. 62, 68, 765 P.2d 1306, 1309–10. We
find this rationale applicable in this case.

Mr. Newkirk paid a specified premium to USAA for his
insurance policy. For that premium, USAA agreed to pro-

vide, among other benefits, the maximum of $15,000.00 of liability coverage for bodily injury to any of Mr. Newkirk's family members. Were we to allow Mrs. Newkirk to recover additional liability benefits through Mr. Newkirk's less expensive underinsured motorist coverage by holding the "family car exclusion" to be invalid, we would be requiring USAA to pay well over $15,000.00 in liability coverage for Mrs. Newkirk's injuries and thus be forcing USAA to assume a much greater risk of loss than it had agreed to assume for the amount of premium which Mr. Newkirk paid. Moreover, to compensate in the future for the additional liability coverage which we would be forcing it to provide through its underinsured motorist coverage, USAA would have to raise its customers' premiums. This in turn would harm those customers of USAA who may not be able to afford or may not wish to pay higher premiums for more extensive liability coverage for their families. Furthermore, because many insurance companies, like USAA, restrict the underinsured motorist coverage they provide to their insureds by including the "family car exclusion" in their policies, these effects would be experienced not only by USAA and its insureds but also by other insurance companies and their customers throughout the Commonwealth.

Given these considerations, we conclude that while it would benefit the Newkirks, it would be against the interests of the public for us to rewrite Mr. Newkirk's policy with USAA to allow Mrs. Newkirk to recover third party liability benefits from Mr. Newkirk's underinsured motorist coverage with USAA. Mr. and Mrs. Newkirk could have contracted for greater liability coverage to protect themselves in situations such as the one with which they are now confronted. They did not choose to do so, and unfortunately they must now bear the harsh consequences of that decision.

Order affirmed.