591 A.2d 290

**Jose Luis MARROQUIN, Appellant,**

v.

**MUTUAL BENEFIT INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued May 22, 1990.

Filed April 11, 1991.

Reargument Denied June 14, 1991.

Jonathan M. Crist, Harrisburg, for appellant.

Peter J. Speaker, Harrisburg, for appellee.

Before OLSZEWSKI, MONTEMURO and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

This is an appeal from the order of January 17, 1990, granting appellee's motion for summary judgment. Appellant argues that the trial court erred in finding that the "Family Car Exclusion" in a family member's underinsurance motorist policy prohibits recovery by a resident family member where the tortfeasor is another resident family member covered by his own policy of liability insurance separate and distinct from the policy under which the underinsurance motorist benefits are claimed. We reverse and remand.

On January 19, 1989, appellant, Jose Luis Marroquin, was injured when he was struck by an automobile owned and operated by his brother, Jorge Marroquin. At the time of the accident, both appellant and his brother resided with their parents. The parent's automobile policy was issued by appellee. This policy specifically covered two of their vehicles and provided liability coverage for family members. "Family member" was defined by the policy as any relative that lived in the same household as the named insured. Therefore, it is not disputed that appellant was insured under his parent's policy. The policy also included one hundred thousand dollars in underinsured motorist benefits.

In addition, at the time of the accident, Jorge Marroquin, the tortfeasor, was the named insured on a separate policy, also issued by appellee, which covered only the vehicle that was involved in the accident. The policy issued to Jorge Marroquin contained the following "Family Liability Limitation":

> We do not provide Liability Coverage for any person, for 'bodily injury' to you or any 'family member,' to the extent that the limits of liability for this coverage exceed the limits of liability required by the Pennsylvania Motor Vehicle Financial Responsibility Law of 1984.

Appellant made demand on appellee for thirty-five thousand dollars, such amount being the stated liability limit of the policy issued to Jorge Marroquin. Appellee refused, asserting the above liability limitation. Appellant then executed a

limited release for fifteen thousand dollars, the limit of liability required by the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1701 et al. (Hereinafter MVFRL).

Appellant thereafter attempted to collect on the underinsured driver coverage in his parents insurance policy. The underinsured motorist section of the policy contained the following language:[1]

## I

We will pay damages which an "insured" is legally entitled to recover from the owner or operator of either an "uninsured motor vehicle" or "underinsured motor vehicle," but not both, because of 'bodily injury:'
1. Sustained by an 'insured,' and
2. Caused by an accident

## II

'Insured' as used in this endorsement means:
1. 'You or any family member.'
2. 'Any other person' 'occupying' 'your covered auto.'
3. Any person for damages that person is entitled to recover because of 'bodily injury' to which this coverage applies sustained by a person described in 1. or 2. above.

'Underinsured motor vehicle' means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for 'bodily injury' under that bond or policy to an 'insured' is not enough to pay the full amount that the 'insured' is legally entitled to recover as damages.

## III

In addition, neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes any vehicle or equipment:

---

1. We include only those sections of the policy that are relevant to the disposition of this case.

1. Owned by or furnished or available for the regular use of you or any 'family member.'
2. Owned by any governmental unit or agency.
3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as residence or premises.

The "Definitions" section of the policy further defined the terms "you" and "family member":

## IV

Throughout this policy, 'you' and 'your' refer to:
1. The 'named insured' shown in the Declarations; and
2. The spouse if a resident of the same household.

## V.

'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

On the basis of the above language, appellee denied appellant's request for underinsured motorist benefits. Appellee asserted that the "Family Car Exclusion" clause (See III, 1) specifically excludes appellant's brother's automobile from the definition of an underinsured motor vehicle. Appellant filed this Declaratory Judgment action seeking a declaration that the "Family Car Exclusion" is void as against public policy and contrary to the express provisions as well as the intent of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the alternative, appellant argues that under the provisions of the MVFRL the "Family Car Exclusion" shall not apply to the extent that the owner and/or vehicle or equipment owned by or furnished for the regular use of the insured or any "family member" is covered by a policy of liability insurance separate and distinct from the policy under which Underinsured Motorist Benefits are claimed. Appellant and appellee filed motions

for the grant of summary judgment. On January 17, 1990, the trial court issued an opinion and order which determined that the "Family Car Exclusion" was neither in derogation of legislative intent in enacting the MVFRL nor a violation of public policy, thereby granting summary judgment in appellee's favor. Most importantly, the trial court found that there existed no case law that dealt with the exact situation involved in this case. In so doing, the trial court distinguished between the rights of a "named insured" and the rights of family members who are protected under the policy but who pay no premiums. This appeal followed.

This court has often set forth the rules to be followed in deciding a motion for summary judgment:

> On motions for summary judgment, the Court must consider the entire setting of the case and all of the papers that are included in the record. One who moves for summary judgment has the burden of demonstrating clearly that there is no genuine issue as to any material fact. The Court must consider both the record actually presented and the record potentially possible at the time of trial. A hearing on the motion for summary judgment is not a trial on the merits, and the Court on such motion should not attempt to resolve conflicting contentions of fact. The Court is to accept as true all well pleaded facts in the plaintiff's pleadings as well as the admissions on file, giving to the plaintiff the benefit of all reasonable inferences to be drawn therefrom. The record must be examined in the light most favorable to the non-moving party. In passing upon a motion for summary judgment it is not part of the court's function to decide issues of fact, but solely to determine whether there is an issue of fact to be tried. All doubts as to the existence of a genuine issue as to material fact must be resolved against the party moving for summary judgment. A party should not be deprived of an adequate opportunity to fully develop his case by witnesses and a trial, when the issues involved make such procedure the appropriate one. It is often the case that although the basic facts are

not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts. [sic.] Under such circumstances the case is not to be one to be decided by the Trial Judge on a motion for summary judgment.

*Hess v. Fuellgraf Electric Company*, 350 Pa.Super. 235, 237–238, 504 A.2d 332, 333–334 (1986) (citations omitted) quoting *Schacter v. Albert*, 212 Pa.Super. 58, 61–62, 239 A.2d 841, 843 (1968). "On appeal from an order entering summary judgment, this court will reverse the trial court upon a showing of an error at law or a clear abuse of discretion." *Jones v. Keystone Insurance Company*, 364 Pa.Super. 318, 528 A.2d 177 (1987) *allocatur denied* 518 Pa. 613, 540 A.2d 535 (1988) quoting *Miller v. Federal Kemper Insurance Company*, 352 Pa.Super. 581, 585–586, 508 A.2d 1222, 1225 (1986).

Appellant presents three arguments on appeal. First appellant argues that the "Family Car Exclusion" is invalid under Pennsylvania law as against the public interest under the circumstances as presented in this case. Second, appellant claims that the application of the "Family Car Exclusion" to benefits from a separate policy on which appellant is insured violates legislative intent.[2] Third, appellant claims that the lower court erred in denying underinsurance benefits to appellant under his parents' policy since he was an insured as defined by the MVFRL and the definitions of the policy itself.

Appellant first argues that the "Family Car Exclusion" as applied to underinsured motorist benefits in the instant case is void as against the public policy expressed by the language of the MVFRL and interpreted by the case law of

---

**2.** Appellant specifically argues that the term "underinsured motor vehicle" as defined by the insurance policy under which he was seeking benefits was more narrow than the statutory definition of the term as it was defined in the MVFRL. Consequently, appellant claims, the restriction is in derogation of legislative intent and is therefore void. However, due to our resolution of appellant's first and third arguments, we need not address this contention.

Pennsylvania and Minnesota. In explaining the relevance of Minnesota case law, appellant cites the similarity of that state's motor vehicle insurance legislation, asserting that Pennsylvania courts have often relied upon Minnesota law for guidance in this field.[3] As set out by one author, the public policy considerations that were taken into account when including underinsured motorist provisions in the MVFRL were as follows.

The Financial Responsibility Law has a number of related policy goals. Chief among them is the establishment of a liberally compensatory scheme of uninsured and underinsured motorist protection. The Financial Responsibility Law also acts to eliminate the distinctions in coverage between uninsured motorist protection and underinsured motorist protection.

**(a) Full Compensation.** In cases arising under the Uninsured Motorist Act, the courts have always discerned a liberally compensatory intent in the law and construed the statute to serve that end. This intent is preserved, if not strengthened, in the Financial Responsibility Law. .

The Uninsured Motorist Act requires that insurance protection be afforded for the protection of persons insured thereunder who are legally entitled to recover damages from owners and operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. (footnote omitted).

The Financial Responsibility Law similarly states that uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. (footnote omitted).

3. We note that appellant is actually comparing the MVFRL to Minnesota motor vehicle insurance legislation as it existed at the time that the Minnesota Court of Appeals decided *DeVille v. State Farm Mutual Automobile Insurance Company*, 367 N.W.2d 574 (1985), discussed *infra*. Such a distinction does not detract from the relevance of *DeVille*, and subsequent cases espousing the principles set forth in *DeVille*, to the current state of Pennsylvania law.

The Financial Responsibility Law adds a virtually identical clause with respect to underinsured motor vehicles, replacing the word 'uninsured' with 'underinsured'. (footnote omitted)

The language in the Uninsured Motorist Act was considered by the Pennsylvania Supreme Court when it declared that the act was to be interpreted as having a liberally compensatory intent. (footnote omitted) That this language is preserved in the new law indicates the drafter's intention that the Financial Responsibility Law be construed in the same fashion....

**(b) Integrating Underinsured Motorist Coverage with Underinsured Motorist Coverage.** A second goal of the Responsibility Law is to eliminate the distinction in coverage between uninsured motorist coverage and underinsured motorist coverage. (footnote omitted)

*Pennsylvania Motor Vehicle Insurance, An Analysis of the Financial Responsibility Law,* Ronca, Sloane, Mundy, Pennsylvania Trial Lawyers Association, (1986) at 96–98. Decisions of this court have discussed these same policy considerations but have recognized certain limitations thereon.

In *Wolgemuth v. Harleysville Mutual Insurance Company,* 370 Pa.Super. 51, 535 A.2d 1145 (1988), this court, sitting *en banc,* held that a guest passenger who was injured in a one vehicle accident could not recover underinsurance benefits under a policy applicable to the host vehicle when the passenger already had received the limits of liability coverage under that *same policy.* While interpreting the statute, we stated:

The purpose of underinsured motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage for the injuries caused by his negligence.... The language of the statute itself suggests that underinsurance motorist coverage requires the existence of at least *two* applicable policies of motor

vehicle insurance. *See* 75 Pa.C.S.A. § 1731(c). An underinsured motor vehicle, must, by it definition, be an insured vehicle. Thus, the statute contemplated one policy applicable to the vehicle at fault in causing the injury to the claimant and which is the source of the liability coverage (which is ultimately insufficient to fully compensate the victim), and a second policy, under which the injured claimant is either an insured or a covered person. It is the second policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Wolgemuth v. Harleysville Mutual Insurance Company, supra,* 370 Pa.Super. at 58, 535 A.2d at 1149. The court determined that to allow Wolgemuth to "recover underinsured motorist benefits from appellee Harleysville would be to convert the essentially first party underinsured motorists coverage into third party liability coverage." *Wolgemuth v. Harleysville Mutual Insurance Company, supra,* 370 Pa.Super. at 60, 535 A.2d at 1150. The court specifically found that the definition of an underinsured motor vehicle contained in the policy (containing a "Family Car Exclusion" clause such as is present in the instant case) is not violative of public policy.

In *Newkirk v. United Services Automobile Association,* 388 Pa.Super. 54, 564 A.2d 1263 (1989), this court extended the rationale set forth in *Wolgemuth.* In *Newkirk,* a woman was injured in a one vehicle accident in which her husband was driving. Mrs. Newkirk, as the spouse and resident of the same household as the named insured, was classified as a class one beneficiary. Because of a family liability exclusion, Mrs. Newkirk received only $15,000 in liability payments from her husband's policy. She then made demand of the insurance company for the full amount of underinsured motorist coverage available under the same policy from which she received her liability limit. Again, there existed only one insurance policy. The insurance

company refused, citing the Family Car Exclusion in the insurance policy. Citing *Wolgemuth,* this court again recited the importance of more than one policy of insurance for recovery of underinsured motorist benefits. The fact that Mrs. Newkirk was a class one beneficiary, and not a class two beneficiary as was Wolgemuth, was insufficient to cause the Family Car Exclusion clause to be declared invalid. The *Newkirk* court reiterated that it was not the intent of the legislature to allow the substitution of less expensive underinsured motorist coverage for liability coverage. The history as well as the current status of underinsured motorist coverage in this Commonwealth, as set out in *Wolgemuth,* was further delineated by this court in *Newkirk:*

> We explained that prior to the passage of the MVFRL, 'underinsured motorist coverage, was not required in Pennsylvania or regulated by statute'. Because of this, those claimants who purchased uninsured motorist coverage were in a better position when they were involved in a car accident with an uninsured tortfeasor rather than an underinsured tortfeasor. If they were hit by an uninsured tortfeasor, they could recover from their uninsured motorist benefits; however if they were hit by an underinsured tortfeasor, they could not recover from that coverage, but were limited to recovering the minimal amount of benefits available to them under the tortfeasor's insurance. The legislature enacted the underinsured motorist coverage in the MVFRL to resolve this anomaly.... We also [have] noted that the language utilized by the legislature in section 1731(c) of the Motor Vehicle Financial Responsibility Law (MVFRL) suggests that underinsured motorist coverage requires the existence of at least two policies of motor vehicle insurance.

*Newkirk v. United Services Automobile Association, supra,* 388 Pa.Super. at 57–58, 564 A.2d at 1265.

Although declining to address the issue, the *Newkirk* court foresaw a situation arising that is substantially similar to the one now before this court. The court stated:

It is important to keep in mind in this case that we are considering whether Mrs. Newkirk is precluded from recovering both liability and underinsured motorist coverage from the *same* policy, that is, her husband's policy with the USAA. We are not addressing the issue of whether the "family car exclusion" could be enforced to bar a wife's recovery of underinsured motorist benefits through her own separate automobile insurance if she was injured while riding as a passenger in another vehicle, where the third party benefits which she recovered from her husband's insurance failed to pay her losses and damages. *See* e.g., *DeVille v. State Farm Mutual Automobile Insurance Company*, 367 N.W.2d 574 (Minn.Ct.Appeals 1985) (rule that 'family car exclusion' is enforceable against plaintiff who is attempting to convert underinsured motorist coverage into liability coverage does not apply or extend to situation where wife recovered under husband—tortfeasor's 'liability coverage and is now seeking underinsured motorist benefits from her own personal policy with underinsured motorist coverage purchased by her for her own individual protection.')

*Newkirk v. United Services Automobile Association, supra*, 388 Pa.Super. 54, 63, n. 8, 564 A.2d 1263, 1267, n. 8 (1989). The *Newkirk* court thus directs us to the primary case that we consider under Minnesota law.

In *DeVille v. State Farm Mutual Automobile Insurance Company*, 367 N.W.2d 574 (1985), the Minnesota Court of Appeals invalidated the "Family Car Exclusion" in circumstances involving two policies of insurance. In that case, Jennifer DeVille was injured while riding as a passenger on her husband's motorcycle. After recovering the limits of her husband's liability insurance, she sought underinsured motorist benefits from a separate individual policy that she had purchased for her own automobile. Her policy contained a "Family Car Exclusion". The court in *DeVille* stated:

DeVille recovered under the tortfeasor's liability coverage and is now seeking underinsured motorist benefits

from her own personal policy with underinsured motorist coverage purchased by her for her own individual protection. This is classic "first-party" coverage and should follow her wherever she may be located when injured. She paid separate premiums for the car registered to her, and the policy was issued to her. To hold otherwise would be to carve out a new exception to the *Sarvela* rule, applicable when the tortfeasor and the victim are a married couple. This is an exception that we cannot make. Although married, DeVille is a separate person from her tortfeasor husband, owns a separate automobile, and has a separate policy. We cannot infer that the two are somehow acting as one and attempting to convert underinsured motorist coverage into liability coverage.

*DeVille v. State Farm Mutual Insurance Company, supra,* 367 N.W.2d at 577.[4] The *Sarvela* rule to which the court refers originated in *American Motorist Insurance Company v. Sarvela,* 327 N.W.2d 77 (Minn.1982). This rule states that a policy provision which excludes underinsured motorist benefits when the insured is injured while occupying a vehicle owned by the insured or family member is *presumed to be invalid.* However, a limited exception to this rule involves cases in which the plaintiff is attempting

---

**4.** We note that the holding in *DeVille* has been superseded by statute. In 1985, the Minnesota legislature amended Minn.Stat. § 65B.49, which now reads, in part:

> The uninsured and underinsured motorist coverages required by this subdivision do not apply to bodily injury of the insured while occupying a motor vehicle owned by the insured, unless the occupied vehicle is an insured motor vehicle.

However, the relevance of *DeVille* and its progeny (the statutory amendment does not affect policies of insurance entered into prior to its enactment) is not altered by the legislative amendment. The Minnesota legislature interpreted their motor vehicle insurance legislation as it existed at the time of *DeVille* just as we now interpret our legislation. The MVFRL contains no language that parallels the Minnesota amendment. Indeed, had the MVFRL contained identical language, the effect upon the instant case, given its particular factual circumstances, is unclear. *See Petrich v. Hartford Fire Insurance,* 414 N.W.2d 558, 562, n. 3 (Minn.App.1987). Should the Pennsylvania legislature pass any amendment to the MVFRL, the validity of our analysis interpreting the current state of Pennsylvania law need not be affected. This court is not required to anticipate legislative action.

to convert underinsured coverage (first-party coverage) into liability coverage (third-party coverage). Therefore, the Pennsylvania cases of *Wolgemuth* and *Newkirk* are not considered adverse to the *Sarvela* rule since both fall squarely within the exception to the rule.

Most important to the disposition of the instant case is that the Minnesota court in *DeVille* found that *DeVille's* particular factual situation did not fall within the exception. As we now determine that the findings made in *DeVille* are consistent with Pennsylvania case law as well as Pennsylvania public policy as represented by the MVFRL, we adopt the reasoning and conclusions contained therein.

We must now determine whether the factual situation in the instant case necessitates, under a *DeVille* analysis, the invalidation of the "Family Car Exclusion" provision in the parents' policy. We find that such a provision is invalid and unenforceable as being void as against public policy. Ascertainable from the language appearing in the MVFRL and the cases of *DeVille, Newkirk,* and *Wolgemuth* is the fact that this Commonwealth considers underinsured motorist coverage to be in the public interest. It is also apparent that the legislature foresaw the existence of more than one policy of insurance as necessary for an injured to recover such benefits, such a limitation preventing insureds from substituting less expensive underinsured motorists coverage for liability coverage.

In the instant case, there was no question that two insurance policies were involved. The parents' insurance agreement clearly stated that it did not extend liability coverage to any vehicle that was not a "covered vehicle" and was owned by a family member.[5] Jorge Marroquin's

5. Appellee disputes this point in his brief. However, counsel did admit, at argument, that this was an error. We note in response to a post submission communication on the part of counsel for appellee that the copy of the insurance policy supplied to this court in both the original and reproduced record was incomplete and difficult to read. Therefore, at the panel's request, the Prothonotary notified the appellant to furnish this court with a complete and readable copy of the policy.

individual insurance policy was therefore responsible for liability damages. Under the reasoning employed in *De-Ville*, the insurance coverage in the instant case is identical to that enjoyed by appellant in *DeVille*. When describing DeVille's insurance the pivotal language used by the Minnesota court is that "[t]his is 'first-party coverage,' and it should follow her wherever she may be located when injured." *DeVille v. State Farm Mutual Automobile Insurance Company, supra,* 367 N.W.2d at 577. In the instant case, there is no dispute that appellant's underinsured motorist coverage followed him to whatever point that he may have been injured. The only bar to his recovery was that his brother owned the vehicle that injured him. Under the facts of this case, such a bar was not justified as its purpose was not to convert underinsured motorist coverage into liability coverage.

Appellee argues that the number of policies is not dispositive and that such a ruling allows several family members to manipulate the amount of insurance that they buy under several policies so as to substitute underinsured motorist coverage for liability coverage. We answer such an allegation with the reasoning in *DeVille*. Under circumstances such as those present in this case, we will not infer, without more, that the parties "are somehow acting as one and attempting to convert underinsured motorist coverage into liability coverage." *Id.*

Finally, we address appellee's contention that the instant case is distinguishable from *DeVille* because appellant is not the "named insured" in this case and as such did not pay premiums to appellee.[6] It is this distinction upon which the trial court bases much of its decision. We determine that this distinction is not dispositive. First, as we have discussed above, the pivotal language in *DeVille* was not the identity of the person paying the premiums, but rather what type of coverage was enjoyed by insureds. We do not

6. We note that the trial court's use of the term "insured" is consistent with our definition of "named insured".

interpret *DeVille* as fashioning distinctions based upon the identity of the person making a premium payment.

Next, any suggestion by the trial court that this distinction was supported by the Minnesota Court of Appeals' decision in *Linder by Linder v. State Farm Mutual Automobile Insurance Company*, 364 N.W.2d 481 (1985), is incorrect. The trial court adequately summarizes the facts and holding of *Linder*.

> [T]he plaintiff was struck by a vehicle driven by her brother and was paid liability limits on that vehicle. She then sought underinsurance motorist coverage pursuant to separate policies on two other family vehicles. The insurer refused to pay on the basis of a family car provision in those separate policies. The court held that the family car provisions were valid, rejecting claims that its provisions violated statutes mandating underinsured motorist coverage and public policy.

Trial court opinion, 1/17/90 at 7. However, Linder was not denied underinsured motorist coverage because she was not the "named insured" and did not pay premiums. Linder was denied coverage because all three insurance policies involved were in the name of the *same* insured, her father. Since that was the case, if the "Family Car Exclusion" were to be invalidated, nothing would prevent the father from converting his inexpensive underinsured motorist coverage into liability coverage. Indeed, *Linder* supports the proposition that it is the type of coverage that is of paramount importance. Appellant was denied coverage, *just as her father (the Named Insured) would have been* had he been the injured party.

In addition, we find that appellant is not precluded from eligibility for underinsured motorist benefits due to the language contained in the policy. The portion of the insurance policy detailing the underinsured motorist coverage clearly equates the coverage enjoyed by an insured with that of their family members. Appellant, therefore, is eligible to receive underinsured motorist benefits under the terms of the contract. Similarly, appellant clearly falls

within the definition of an "insured" as defined by the MVFRL at 75 Pa.C.S. § 1702.

We therefore determine that appellant has established, under the circumstances of this case, that the "Family Car Exclusion" contained in the insurance policy issued to his parents (and extended to him) is invalid under Pennsylvania law. We also determine that absent this exclusion, appellant is eligible to recover under the terms of that policy. Accordingly we reverse the order of the trial court granting summary judgment in favor of appellee and remand this case for action not inconsistent with this opinion.

Order reversed. Case remanded.