621 A.2d 1015

Paul T. SHERWOOD, Jean Sherwood
and T.J. Sherwood, Appellants,

v.

BANKERS STANDARD INSURANCE COMPANY and
State Farm Insurance Company, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 29, 1992.

Filed March 12, 1993.

14

Harry W. Fenton, Lebanon, for appellants.

Edward J. Coyle, Lebanon, for appellee.

Before DEL SOLE, POPOVICH and HUDOCK, JJ.

HUDOCK, Judge:

A single issue is presented for our review: Did the court below err in entering summary judgment on the basis that the family car exclusion contained in the policies issued by Appellee State Farm Insurance Company (State Farm) barred Appellant Paul Sherwood (Paul) from recovering first-party underinsured benefits under the facts of this case? We reverse.

This is an insurance dispute arising out of an automobile accident in which Paul was seriously injured while a passenger in his own car. James Collum (Collum) was driving the car; his negligence was the cause of the accident. Because Collum was driving Paul's car with Paul's permission, Paul received $100,000.00 under his own liability policy with State Farm. Paul also received $35,000.00 under an Aetna liability policy owned by Carol Collum, James' mother. Stating that the amount of liability insurance recovered was inadequate, Paul filed a claim for underinsurance motorist benefits from two

insurance companies: 1) Bankers Insurance Company (Bankers),[1] pursuant to a policy owned by his mother, Jean Sherwood, and 2) State Farm Insurance Company (State Farm), pursuant to policies owned by his grandfather, T.J. Sherwood (T.J.). T.J.'s policies insured his cars and the members of his household. Paul lived at home with his grandfather and his mother at the time of the accident.

Under T.J.'s State Farm policies, a person claiming underinsured motorist benefits had to notify the company and arbitrate the claim. State Farm was notified of Paul's desire to arbitrate his claim against them, but it did not respond. Following the procedures set forth in the insurance policy, Paul filed a petition to compel State Farm to proceed to arbitration. Denying its obligation to arbitrate Paul's claim, State Farm responded to the petition by raising a number of defenses, including the family car exclusion found in T.J.'s policies. This exclusion denied coverage for any car furnished for the regular use of the insured's family.[2]

According to the trial court, the tenor of Pennsylvania case law suggests that "a person cannot collect both liability and underinsurance benefits from a single policy, or collect both liability and underinsurance benefits from two policies under which he, the person who underinsured the motor vehicle in which the injury occurred[,] is a beneficiary." Opinion of the Honorable Robert J. Eby, March 25, 1992, at p. 13. Because Paul exercised control over the amount of liability coverage he would receive under his own policy, which amount proved to be insufficient to fully compensate him for his injuries, the trial court concluded that Paul cannot be heard to complain that he was underinsured. Consequently, the trial court refused to allow Paul to supplement his insufficient liability coverage with underinsurance benefits from his grandfather's policies. On the basis of this reasoning, the trial court found

1. Bankers has agreed to pay underinsurance motorist benefits upon receipt of proof of damages, and so is no longer concerned with this case.

2. If the exclusion is, in fact, valid in the instant matter, none of the parties disputes its application to bar Paul's claim for underinsurance benefits.

that the family car exclusion was valid and operated against Paul's claim; therefore, the trial court granted State Farm's motion for summary judgment. The Sherwoods appealed, challenging the validity of the family car exclusion.

In reviewing an entry of summary judgment, this Court will not reverse unless the trial court has committed an error of law or an abuse of discretion. *West Penn Power Co. v. Piatt,* 405 Pa.Super. 467, 592 A.2d 1306 (1991), *alloc. den.,* 530 Pa. 646, 607 A.2d 255 (1992). Summary judgment is to be entered only in those cases that are free and clear from doubt, where the uncontroverted allegations of the pleadings and other permissible material filed in support of, and in opposition to, the motion reveal that there is no genuine issue as to a material fact and that the movant is entitled to judgment as a matter of law. *Cooperstein v. Liberty Mutual,* 416 Pa.Super. 488, 611 A.2d 721 (1992).

Sherwoods claim that the family car exclusion is invalid as against public policy in this case, and, therefore, should not operate to preclude Paul from recovering underinsurance benefits under T.J.'s State Farm policies. State Farm, on the other hand, contends that Paul is not entitled to benefits under T.J.'s policies because he underinsured himself and because he is attempting to convert underinsurance benefits into liability benefits.

■ The family car exception at issue in this case reads as follows:

An **underinsured motor vehicle** does not include a land motor vehicle:

\*    \*    \*    \*    \*    \*

2. furnished for the regular use of <u>you, your spouse</u> or <u>any relative.</u>

State Farm Policy, Exhibit E, at p. 15. The general rule in Pennsylvania regarding family car exclusions is that such provisions are invalid as against the policy of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1701 *et seq.* (Purdon Supp.1992). *Marroquin v. Mutual Benefit Insurance Co.,* 404 Pa.Super. 444, 455, 591 A.2d 290,

296 (1991) (citations omitted). Allowing the family car exclusion to bar coverage in cases where a plaintiff is attempting to convert underinsured coverage into liability coverage constitutes a limited exception to the general rule. *Marroquin*, 591 A.2d at 296.

■ The MVFRL defines an underinsured motor vehicle as "A motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S. § 1702. The underlying policy of the MVFRL is to "provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S. § 1731(c). The MVFRL is to be liberally construed. 1 Pa.C.S. § 1928(c) (Purdon 1992). We may not, however, rewrite the MVFRL under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b) (Purdon 1992). Rather, we must be guided in our interpretation of the MVFRL by the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.* (Purdon 1992). Our objective in interpreting the MVFRL is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a) (Purdon 1992).

The leading case on application of the MVFRL is *Wolgemuth v. Harleysville Mutual Insurance Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988), *alloc. den.*, 520 Pa. 590, 551 A.2d 216. In *Wolgemuth*, a panel of this Court considered the question of whether a victim in a single car accident could recover both liability and underinsurance benefits from the single policy covering the accident vehicle. *Wolgemuth*, 535 A.2d at 1146. Although based on distinguishable facts, the reasoning and implications of the *Wolgemuth* decision are instructive in disposing of the matter before us.

The language of the [MVFRL] itself suggests that underinsurance motorist coverage requires the existence of at least *two* applicable policies of motor vehicle insurance. *See* 75 Pa.C.S. § 1731(c). An underinsured motor vehicle, must, by definition, be an insured vehicle. Thus, the statute contemplates one policy applicable to the vehicle which is at

fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a *second* policy, under which the injured claimant is either an insured or a covered person. It is the *second* policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Wolgemuth*, 535 A.2d at 1149 (emphasis in original).

In the case at hand, two insurance policies are at issue. Paul is an insured under his own insurance policy. Paul recovered $100,000.00 under his policy because Collum was negligent while driving Paul's car with Paul's permission. Paul is also covered under his grandfather T.J.'s policies as a household member. Paul seeks underinsured motorist benefits under T.J.'s policies because the liability insurance he recovered from his own policy and from Carol Collum's policy did not fully compensate his injuries.

Sherwoods argue that the family car exclusion is invalid in this case because it denies Paul underinsured motorist benefits in a circumstance under which such benefits were meant to be provided, i.e., where liability benefits are insufficient to fully compensate the insured. According to Sherwoods, this case does not involve an attempt to convert less expensive underinsurance benefits into liability coverage—a circumstance under which the family car exclusion would be deemed valid and recovery denied. *Marroquin; Wolgemuth; Newkirk v. United Services Automobile Assoc.*, 388 Pa.Super. 54, 564 A.2d 1263 (1989), *alloc. den.*, 528 Pa. 624, 597 A.2d 1153 (1990). Rather, Sherwoods claim, Paul is seeking first-party underinsurance benefits under a policy which is entirely separate and distinct, with regard to the owner and automobile covered, from the policy under which liability benefits were provided. Appellants' brief at p. 19. Furthermore, suggest Sherwoods, consideration of whether a person requesting underinsured benefits "had control over the liability provisions under which third-party benefits were paid" has not been

discussed by this Court as a relevant factor. Appellant's brief at p. 23.[3]

Sherwoods also suggest an inconsistency in the trial court's ruling with regard to the liability coverage available to Paul under Carol Collum's policy and the purposes of the MVFRL.

Had P. Sherwood not carried liability coverage on his own car, under the analysis of the trial court, he would have been permitted to retrieve underinsured motorist benefits, [because] the Collum family's insurance coverage would have provided insufficient liability coverage, and P. Sherwood clearly had no control over the liability amounts payable under the Collum family policy. Therefore the trial court would grant P. Sherwood underinsured benefits if he personally carried no liability coverage, but deny such benefits to him because he insured himself as required under the MVFRL. This result is plainly at odds with the intent of the MVFRL ...

Appellants' brief at pp. 24–25.

In defense, State Farm reiterates the arguments upon which the trial court relied. Paul's being underinsured was

---

**3.** Our research uncovered a recent case which does refer to an insured's control over the amount of liability coverage purchased. The case is *Kelly v. Nationwide Ins. Co.*, 414 Pa.Super. 6, 18–20, 606 A.2d 470, 476 (1992). We consider the facts of *Kelly* distinguishable from the facts of the matter *sub judice* and, therefore, do not rely on the reference to an insured's control over the purchase of liability coverage.

Mrs. Kelly and her husband purchased a single insurance policy which covered both their cars. The policy contained an exclusion which denied underinsurance coverage to any vehicle also insured under the liability coverage of the policy. Mrs. Kelly was injured while a passenger in one of the cars. She recovered liability insurance pursuant to the coverage on the accident vehicle. She then sought underinsurance benefits pursuant to the coverage on the second car. According to the *Kelly* panel, the vehicle exclusion in Nationwide's policy was in perfect accord with the purpose of the MVFRL (protection of the injured claimant against the risk that a tortfeasor over whom the claimant has no control purchases an inadequate amount of liability coverage). The panel opined that Mrs. Kelly and her tortfeasor husband, "had control over the amount of liability coverage they purchased. We have no trouble holding that despite [Mrs. Kelly's] attempt to characterize this as a novel claim, precedent has already spoken on this question." *Kelly*, 606 A.2d at 476. The precedent to which the *Kelly* panel referred is *Wolgemuth* (insured may not collect both liability and underinsurance benefits from the same policy).

his own fault; he should not be allowed to recover underinsurance benefits because he underinsured himself against the potential risks of letting someone else drive his car. As owner of the underinsured vehicle, Paul should not be permitted to convert his grandfather's underinsured motorist coverage—of which he was a potential beneficiary—into coverage that would supplement the liability coverage over which he personally exercised control.

Having thoroughly reviewed the case law relevant to this case, we do not believe Paul was attempting to convert underinsurance benefits into liability benefits. As we stated in *Wolgemuth*,

> [T]he legislature, with the passage of the Motor Vehicle Financial Responsibility Law, did ensure that every injured individual who is injured by a negligent, underinsured motorist, will have recourse to at least $15,000 of underinsured motorist benefits either (1) pursuant to the policy of insurance applicable to the vehicle in which the individual was a passenger (if the vehicle was not at fault), or (2) **pursuant to a policy of insurance under which the injured claimant is an insured person.**

*Id.*, 535 A.2d at 1148 (emphasis added) (footnote omitted). While we agree that Paul could not receive both liability and underinsurance benefits under his own policy, *Wolgemuth; Cooperstein; Caldararo ·v. Keystone Insurance Co.*, 393 Pa.Super. 103, 573 A.2d 1108 (1990), *alloc. den.*, 525 Pa. 640, 581 A.2d 567, we believe the MVFRL allows him to recover underinsured motorist benefits from another policy under which he is covered, namely, T.J.'s State Farm policies. Unlike the plaintiff in *Wolgemuth*, Paul is not attempting to convert underinsurance payments into liability payments. Rather, he is attempting to recover underinsurance benefits due to the fact that his and Collum's combined liability insurance did not adequately cover his damages.

The difficulty in this case is that Paul was a passenger in his own car when the accident occurred. Because Paul allowed Collum to drive, Paul's own liability insurance was required to provide coverage for Collum's negligence. Consequently, Paul

was precluded from receiving underinsured motorist benefits under his own policy.[4] *See Caldararo, supra* (husband, injured while passenger in vehicle owned by him and operated by his wife, could not recover underinsurance benefits under his policy after collecting full liability coverage limits under his policy); *Cooperstein, supra* (estate of wife killed while riding as passenger in car operated by insured/husband could not recover underinsurance benefits after collecting benefits pursuant to liability provision of insured/husband's multivehicle policy). According to the MVFRL, Paul is not without recourse, however. While his car may not qualify under the State Farm policies as an underinsured vehicle, it qualifies as one under the statutory definition: Paul's car is "a motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S. § 1702. Paul is also entitled to underinsured motorist benefits because James Collum qualifies as an "operator[ ] of [an] underinsured motor vehicle[ ]." 75 Pa.C.S. § 1731(c). Moreover, the MVFRL allows Paul to recover underinsurance benefits pursuant to a policy of insurance under which the injured claimant is an insured. *Wolgemuth,* 535 A.2d at 1148. T.J.'s policies include Paul as an insured; therefore, he is entitled to recover under them.

We can distinguish the facts of this case from the authorities upon which State Farm relies. Those cases involved a claimant seeking to recover both liability and underinsurance benefits from 1) the same policy or 2) a policy under which

**4.** State Farm also argues that Paul is not entitled to underinsurance under T.J.'s policies because Paul failed to adequately insure his own car as the result of his voluntary decision to limit his liability insurance to a certain amount. According to State Farm, if Paul is permitted to recover, insureds could chose the minimum liability insurance coverage and then, when injured in an accident involving their own car, could abuse the MVFRL system by claiming underinsurance benefits under another policy. We find this argument unpersuasive under the facts of this case. Contrary to State Farm's characterization, Paul did not chose the minimum liability coverage limits ($15,000.00/$30,000.00) and then turn to another policy for underinsurance, thereby abusing the MVFRL system. Rather, Paul chose to insure his own vehicle for three times the statutory minimum, which, ironically, was still insufficient to compensate his injuries.

they did not qualify as an insured or a covered party. In this case, Paul was not seeking underinsurance benefits from a policy under which he already collected liability benefits. Nor was he seeking underinsurance benefits pursuant to a policy under which he was not covered.

The case we consider most analogous to the matter before us is *Marroquin*. Jose Luis Marroquin was injured when he was struck by an automobile owned and operated by his brother, Jorge Marroquin. Both Jose and Jorge resided with their parents at the time of the accident. The parents owned an automobile insurance policy with Mutual Benefit. This policy covered two of their vehicles and provided coverage for family members; it also contained a family car exclusion. Jose and Jorge both fell within the policy definition of family member. The policy included underinsured motorist benefits of $100,000.00. Jorge also owned an insurance policy which covered only his vehicle, the one involved in the accident. Jorge's policy contained a family liability limitation which denied coverage in excess of the statutory limits of the MVFRL, i.e., $15,000.00. Jose settled with Jorge's insurer for the policy limit of $15,000.00; he then turned to his parents' insurer, Mutual Benefit, for underinsurance benefits. When Mutual Benefit denied coverage because of the family car exclusion, Jose filed suit against it.

Relying on two Minnesota precedents,[5] the rationales of *Wolgemuth* and *Newkirk*, and the purposes of the MVFRL, a panel of this Court determined that the family car exclusion at issue in *Marroquin* was invalid as against public policy. The panel explained their conclusion as follows:

**5.** The *Marroquin* panel relied on *DeVille v. State Farm Mutual Automobile Ins. Co.*, 367 N.W.2d 574 (Minn.1985), which, in turn, relied on *American Motorist Ins. Co. v. Sarvela*, 327 N.W.2d 77 (Minn.1982). The rule of law announced in *Sarvela*, which this Court adopted in *Marroquin*, states that "a policy provision which excludes underinsured motorist benefits when the insured is injured while occupying a vehicle owned by the insured or family member is **presumed to be invalid.**" *Marroquin*, 591 A.2d at p. 296 (emphasis in original). We note, therefore, that State Farm bears the burden of rebutting the presumption that their family car exclusion provision is invalid.

In the instant case, there is no dispute that appellant's underinsured motorist coverage followed him to whatever point that he may have been injured. The only bar to his recovery was that his brother owned the vehicle that injured him. Under the facts of this case, such a bar was not justified as its purpose was not to convert underinsured motorist coverage into liability coverage.

*Marroquin,* 591 A.2d at 297. Because Jose did not have underinsured motorist coverage of his own, he was required to turn to another policy naming him as an insured, i.e., his parents' policy. This Court permitted Jose to recover those benefits.

We similarly believe the only bar to Paul's recovery was that he owned the accident vehicle. Under the facts of this case, such a bar is not justified because we find no evidence that Paul (and/or his mother and grandfather) was attempting to convert underinsured coverage into liability coverage. Because Collum was negligent while driving with Paul's permission, Paul's right to underinsured motorist benefits under his own policy was sacrificed under the holding of *Wolgemuth.* However, the MVFRL authorizes Paul's recovery of underinsured motorist benefits from any policy under which he is an insured. Hence, we find that the family car exclusion is invalid under the circumstances of this case and that Paul is entitled to recovery of underinsured motorist benefits pursuant to the State Farm policies owned by T.J., but naming him as an insured.

Were we to allow denial of Paul's claim for underinsured motorist benefits, when he is an insured party under the State Farm policies who was injured by the negligence of an underinsured tortfeasor, the protection afforded by the MVFRL would be rendered meaningless.

For the foregoing reasons, we believe the trial court erred in adopting an interpretation of the MVFRL which denies underinsurance coverage to a party injured as the result of someone else's negligence while a passenger in his own car, where the party collected liability coverage under his own

24

policy and then seeks underinsurance coverage under a separate policy which covers him as an insured.

Judgment reversed. Jurisdiction relinquished.